Tewksbury v. O'Connell.

---

## TEWKSBURY v. O'CONNELL.

A CONTRACT, purporting to be made between several parties, containing mutual covenants of which those of one party are the consideration of those of the others must, to be valid, be executed by all, and cannot be enforced against one executing, by another who fails to execute.

Thus, where a number of tenants in common were parties to a deed of partition, by the terms of which each party conveyed and released his undivided interest in the whole premises in consideration of the conveyance to him of the undivided interests of the others in a specified portion, and the deed was signed by a large proportion of the parties, but not by all: *Held*, that as a conveyance it was void as to those who did sign, and that they still retained their interests as tenants in common in the whole tract.

Where a deed of partition is invalid as a conveyance, by reason of its non-execution by some of those who are parties to it, it may become effectual by the parties taking and holding in severalty in pursuance of its terms and dealing with their respective portions as if owned in severalty, but such acts of ratification do not operate to make the deed a valid conveyance, but only by way of estoppel or as a determination of boundaries and only upon the interests of those performing them. A party who signed the deed is not estopped from insisting upon its invalidity by reason of any acts of ratification either of the others who did execute or of those who failed to execute.

APPEAL from the Seventh Judicial District.

The agreement of partition upon the validity of which the decision is placed commences as follows:

" This agreement of partition and release, made this fourteenth day of July, A. D. 1856, between John H. Saunders, H. P. Hepburn, and Eugene Musson, of the city of San Francisco, in the State of California, of the first part;

" Martina Castro de Alvarado and Juan B. Alvarado, her hus-

band, David Goodale and Henry Benson, of Contra Costa County, of the second part;

"Antonio Castro, José Ramon Castro, John Provizzo, John Davis, Mancilla B. Bradley, by his attorney in fact, J. M. Tewksbury, Lyman King, and C. P. Pollard, of the third part;

"Juan José Castro and Petra Bernal de Castro, his wife, Thomas J. A. Chambers, Dennis S. Perkins, Lyman King, Ann R. Millson and John Millson, her husband, John Searle, C. P. Pollard, and Thomas P. Madden, of the fourth part;

"Gabriel Castro and Marcellina Felix de Castro, his wife, James T. Dean, Mancilla B. Bradley, by his attorney in fact, J. M. Tewksbury, and Henry Mentz, of the fifth part;

"Joaquin Y. Castro and Trinidad Pacheco de Castro, his wife, Martina Pene, by her attorney in fact, William Smith, Thomas J. A. Chambers, and Emilio Espinosa, of the sixth part;

"Victor Castro and Felicidad Carillo de Castro, his wife, H. L. Ford, William H. Gray, Wilhelmina C. C. Quilfelt, David Goodale, John H. Dall, E. W. Leonard, and John B. Frisbee, of the seventh part;

"Henry Wilkins, of the eighth part;

"Francisco Moraga, José Moraga, Thomas J. A. Chambers, Gustave Touchard, Francisca Martinez de Soto and Angel Soto, her husband, Merced Martinez de Welch and Enrique Welch, her husband, Wilhelmina C. C. Quilfelt, and Henry Wilkins, of the ninth part—owners, or having rights and interests in or liens upon the rancho of San Pablo, situate in the county of Contra Costa, State of California, containing five square leagues of land, more or less, and bounded and described as follows."

The provisions of this agreement are stated in the opinion of the Court, and more fully in the report of the case of *Tewksbury* v. *Provizzo* (12 Cal. 20).

The Court below found the following facts:

"1. That the lands sued for are part of the Rancho San Pablo.

"2. That at and prior to the fourteenth of July, 1856, the grantors of both plaintiff and defendant, were seized in fee simple of undivided interests and estates, as tenants in common between themselves and others in said Rancho de San Pablo; that, on that

day, a written agreement, under the hands and seals of both plaintiff's and defendant's grantors, and certain others, tenants in common in said rancho, was entered into, executed, and acknowledged by said grantors of plaintiff and defendant, and some others, as such tenants in common, and delivered to James A. Forbes, John B. R. Cooper, and Nicholas Gray, in such agreement named, as Commissioners, to make partition of the lands of such rancho.

" That said agreement was not executed, acknowledged, or delivered, either by one Joseph Emeric, a tenant in common in said rancho, (not named in said agreement) nor by one James T. Dean, Francisca Martinez de Soto, and Merced Martinez de Welch, or the respective husbands of the two latter—all five of whom were named in the body of said agreement as contemplated parties thereto, and who were therein recited as part of the owners, or having rights and interests in or liens upon the Rancho de San Pablo.

" 3. That after the execution, acknowledgment, and delivery of said agreement of partition in manner aforesaid, said Commissioners caused a survey and map of the rancho to be made, and thereupon made an allotment and partition of the lands thereof to the plaintiff's and defendant's grantors and others, parties named in said agreement, and made report of their proceedings, partition, and allotment of the lands of said rancho, and caused said agreement for partition, the survey and map of said ranch, together with their said report, to be filed and recorded in the Recorder's office of the county of Contra Costa, as provided in said agreement.

" 4. That, subsequent to said acts of survey, map, allotment, and report, and record thereof as aforesaid, made by said Commissioners, and before the commencement of this suit, the plaintiff and defendant derived respectively from these several grantors, who were parties to said agreement, through duly executed and delivered mesne conveyances, their several respective interests or rights, in and to the lands of said rancho.

" 5. That the lands in complaint described were, by said Commissioners, allotted to and set apart to the plaintiff's grantors."

The final decree declares the partition void, restrains plaintiff perpetually from proceeding further in this action, and orders him

to pay costs taxed at $931 84.    A motion for a new trial was made, and denied; and thereupon this appeal was taken from the judgment and order overruling motion for a new trial.

*George Cadwallader*, for Appellant.

The agreement of partition has, necessarily, a multifarious character.    It is to operate as an authority to certain Commissioners; as a release of certain claims due for defending the title; as a partition of the Rancho San Pablo (with a few minor exceptions) into seven equal parts in value, and one unequal part; and as a release and conveyance from the various nine parties thereto to each other of the different parts; and it also contains a covenant that all sales made by parties thereto shall be subordinate to the agreement.

It has been delivered, the authority executed, and the report thereof, with the agreement, duly recorded, which, *eo instanti*, gave to each of the nine parties in severalty, the particular lots of land assigned them by the Commissioners, with the consequent right, as declared by this Court, in *Tewksbury* v. *Provizzo*, (12 Cal. 20) of maintaining ejectment therefor.

In that case the Tewksbury mentioned is the plaintiff in this case, while the defendant O'Connell, in this cause occupies a position similar to that of Provizzo in 12 Cal. 20.    In that case the agreement of July 14th, 1856, was before the Court, and its character in a measure determined, if not wholly, by a full Bench.

In that case the Court said, (and it applies with equal force to this case) : " Important rights have vested under these proceedings, which a Court would not disturb without great reluctance."

The failure of some parties to sign cannot possibly affect those who did sign.    The instrument is just as binding on them as if all had signed.    When it was delivered it became their deed, and as such, when recorded, operated as a transfer of the title that they had, and to no greater extent.    (*Cayton* v. *Walker*, 10 Cal. 450; *Cutter* v. *Whittemore*, 10 Mass. 142; *Dore* v. *Covey*, 13 Cal. 502; *Smith* v. *Van Nostrand*, 5 Hill, 420; 1 Story's Eq. Jur. sec. 656; 17 Vesey, 544; 11 Texas, 181.)

The parties who did not sign the agreement could ratify or validate the proceedings thereunder, either by express ratifica-

tion or acceptance of the land allotted to them, or a sale of the land by them to persons who had signed and were bound by the agreement. (*Jackson* v. *Richtmyer*, 13 Johns. 367; 16 Id. 313; 2 Caines, 169; *Colton* v. *Smith*, 11 Pick. 311; 23 Id. 1; *Mount* v. *Morton*, 20 Bar. 123; *Baker* v. *Lorillord*, 4 Com. 257; *Tabler* v. *Wiseman*, 2 Ohio, State, 207; 1 Wharton, 292; 16 N. Y. 193; 3 Paige, 470.)

*Eugene Casserly*, for Respondent.

I.   The instrument being a deed of nine parts, and for a partition by Commissioners, and not having been executed by all the parties to it, and having remained unexecuted, was without effect in law for want of mutuality, and for the purposes of this action was wholly void.

The instrument, the Court will observe, was intended to be: 1. An agreement for a partition of the Rancho San Pablo, upon a submission to three Commissioners; and, 2. A deed of release from every one to all the others, to operate as soon as the Commissioners should have filed their report and allotment.

In either and both of these aspects, the consideration to each of the parties for the execution of it by him, is the execution of it by every other party, and the release to him by every other of his interest or right in the part to be allotted to him in severalty by the Commissioners.   Each one is a grantor and a grantee.   The grantor to, and the grantee of, all the others.   Not a part, but all. Upon that consideration he grants and not otherwise.   Each one is an actor to make partition, if all the others named as parties are likewise.   In the present case, the parties being very numerous, cannot execute all at once, or all on the same day; but the execution by the whole is necessarily a continuous act.   It is, however, an entirety, for *non constat* that any one would ever have become a party but that the others were to become parties.   And in the case of so many parties, the operative delivery does not take place as fast as each party signs; for necessarily in the course of the numerous signatures, much time is consumed, and the instrument passes many times from hand to hand.   It cannot take place until after all the parties have signed; unless when less than all, having signed,

Tewksbury *v.* O'Connell.

consent legally that it may be delivered sooner. But this must be distinctly proved ; the presumption of law being that such an instrument is not to take effect until after all the parties have signed.

Mutuality of obligation is of the essence of all such contracts. Without this the consideration fails ; for without this the effect and operation of the instrument are not what each party intended and had a right to expect ; or what he proposed to himself and all the others. And instead of each party having his land in severalty he continues to hold it in common and undivided, at least with all those who failed to execute.

There is, consequently, no complete partition, and none even as to the parties to the instrument ; because that is no partition which any party to it (the instrument) may disregard in fact and overthrow by law. That which the instrument, on its front, declares to be its object—" to settle all disputes touching said rancho," is not attained, for instead of settlement of the old disputes, new disputes are introduced by an attempt at a partition, which is adhered to by one man, and rejected by another.

If five or six parties named in the deed, out of forty, may omit to execute, without avoiding it, so may twenty or thirty, or any number less than the whole. Those who did not sign may be the very parties who have nearly the whole interest in fee ; and those who do sign may be one owner of a large share in fee, and the rest merely owners of a trifling interest in fee and incumbrancers who have nothing to partition. What effect can possibly be given to such an instrument ? Why should it bind the one large owner who signed, evidently with the expectation that the other principal owners would sign also ?

Until all those intended to be bound by a deed *inter partes* have executed it, it remains inoperative, and it is immaterial whether there is or not an express condition to that effect. For, in the signing by each party, the law implies the condition that the instrument shall not take effect, unless and until all the others shall have executed it. (*Townsend* v. *Corning*, 23 Wend. 435 ; *Livingston* v. *Rogers*, 1 Caines, 584 ; *Emery* v. *Neighbour*, 2 Halst. [C. L.] 145 ; *Bean* v. *Parker*, 17 Mass. 603 ; *Burhans* v. *Burhans*, 2 Barb. Ch. 398 ; *Jackson* v. *Brown*, 3 Johns. *459.)

II.   Besides being intended to operate as a deed of grant and release by and between all the parties named therein, the instrument has another aspect, important to be specially considered.   It is an agreement to submit to three Commissioners, chosen by the parties, the partition of the rancho, the division of it into the requisite number of equal parts, and the allotment of these parts among the parties entitled ; their report to be completed within three months from the delivery of the agreement to them, except as provided, etc.

This makes the agreement a submission of the partition to the arbitration of the Commissioners ; makes them arbitrators, and their report an award : the whole being subject to the rules of law applicable in such cases.   (1 Atk. 63 ; 2 Id. 504 ; *Hawkins* v. *Colclough*, 1 Burr. 274 ; *Garr* v. *Gomez*, 9 Wend. 661 ; Kyd on Awards, 21 ; Bac. Abr. tit. "Arbitrament" B ; Russell Arbit. *49–50 [63 Law Lib.] ; *Browne* v. *Meverill*, Dyer, 217*a ;  Johnson* v. *Wilson*, Willes, 248 ; *Van Cortlandt* v. *Underhill*, 17 Johns. *405 ; *Jackson* v. *Ambler*, 14 Johns. 96 ; *Shepard* v. *Ryers*, 15 Johns. 502 ; East. 15 ; 4 Dallas, 20 ; *Jones* v. *Totty*, 1 Sim. 136–7 [2 Eng. Chan.] ; *Manners* v. *Charlesworth*, 1 Myl. & K. *332 [7 Eng. Ch.].)

Of this law of arbitration the most leading principle is, that every agreement of submission shall be mutual and obligatory upon all who are named in it as parties to be bound ; so that the failure of any one of the parties to execute it so as to bind him, shall make it void as to all, as well those who execute as those who do not. (*Antram* v. *Chace*, 15 East. 209 ; *Soprani* v. *Skurro*, Yelv. 18 ; *Britton* v. *Williams' devisees*, 6 Munf. 453 ; *Biddell* v. *Dowse*, 6 Barn. & Cress. 255 ; Trin. Term, 28 Car. 2 ; 1 Cha. Ca. 279 ; Viner Abr. " Abitrament " ; *Ferrer* v. *Owen*, 7 Barn. & Cress. 427 ; *Marsh* v. *Rowe*, 9 Id. 659 ; *Hodson* v. *Harridge*, 2 Saund. 61*l*, note *a ; Brazier* v. *Jones*, 8 B. & Cress. 124 ; *Dilley* v. *Polhill*, 2 Strange, *923 ; *Eastman* v. *Burleigh*, 2 N. H. 486 ; *Furbish* v. *Hall*, 8 Greenl. *315 ; *Rumsey* v. *Leek*, 5 Wend. 20 ; *Keep* v. *Goodrich*, 12 Johns. 397 ; *Tucker* v. *Woods*, Id. 190.)

NORTON, J. delivered the opinion of the Court—FIELD, C. J. and COPE, J. concurring.

Tewksbury v. O'Connell.

This is an action of ejectment, brought to recover certain premises which are a part of a tract of land called the San Pablo Rancho. The defendant claims to be the owner of the undivided one-twenty-fourth part of the rancho. After setting up this title and denying the plaintiff's asserted title, the defendant for a second answer sets up, as an equitable defense, that the plaintiff claims title in severalty to the demanded premises under and by virtue of a certain agreement for a partition of the San Pablo Rancho, and which agreement and the proceedings taken under it the defendant charges are void, and asks to have them so adjudged. The plaintiff in his replication admits that he claims title in severalty under that agreement, and asserts the validity of the agreement and the proceedings under it. The issue arising out of this so-called equitable defense was tried separately, and a judgment rendered that the agreement was void as against the defendant and his grantors, and enjoining the further prosecution of the action by the plaintiff to recover the demanded premises. The plaintiff appeals from the judgment and from an order denying a motion for a new trial.

On the trial, the plaintiff offered in evidence the above-mentioned agreement for partition. Objection was made to its admissibility, on the ground that it had not been executed by John T. Dean, Francisco Martinez de Soto, Merced Martinez de Welch, and José Ramon Castro, who were named as parties to it, nor by Joseph Emeric, not named as a party, but who is said to be admitted by the pleadings to be interested in the rancho. This objection was sustained, and the proffered evidence excluded, to which ruling the plaintiff excepted.

The defendant's title was derived from Victor Castro and E. W. Leonard, by a deed made after the date of the partition agreement, which agreement was signed by them. No question is made but that this agreement is valid against the defendant, if it was valid against his grantors. The first point, therefore, which arises in the case, is whether this agreement is valid and binding against those who executed it, although it has not been executed by others who are named in it as contracting parties, and who are declared in it to have interests in the land proposed to be partitioned.

The agreement is between nine parties, and each party consists of several persons. It provides that three persons named as Commissioners, after setting apart and allotting portions of the rancho to the parties of the first and second parts, shall divide the residue into seven equal parts, allotting one part to each of the remaining seven parties, and then each party releases and conveys to the others all his title and interest in the portions of the rancho not assigned to him. The grantors of the defendant are among the parties of the seventh part; José Ramon Castro, who did not execute, is one of the parties of the third part; and Francisco Martinez de Soto and Merced Martinez de Welch, whose signatures were affixed by a person who, it appears, had no authority so to do, and who are therefore deemed not to have executed, are among the parties of the ninth part. The Commissioners made the partition and allotment as provided by the agreement, except in some particulars not important to consider in this connection. The plaintiff claims that, upon such allotment being made, the agreement took effect as a release and conveyance, by those who executed it to the other parties, of all their title and interest in the parts allotted severally to those other parties; and thus that the grantors of the defendant have conveyed to the grantors of the plaintiff all their title to that portion of the rancho allotted to the plaintiff's grantors, and which embrace the demanded premises. If this be so, the result will be that the defendant's grantors have parted with their undivided interest in the whole of the rancho except that portion allotted to them, but have not a complete title in severalty to the portion allotted to them, inasmuch as the agreement and the proceedings under it can have no effect to transfer to the defendant's grantors the undivided interest in the portion allotted to them which belonged to the parties who did not execute the agreement. The defendant claims that the possibility of such an injustice is a conclusive argument in support of his position that an agreement like the one in question, between several parties, where performance by one is the consideration for the performance by the other, could not be intended to be, and cannot legally be held to be, binding upon any party until executed by all. In support of the defendant's position, the case of *Townsend* v.

Tewksbury *v.* O'Connell.

*Corning* (28 Wend. 435) is cited, in which Judge Bronson says: "A writing *inter partes* is prepared, by which one party is to covenant for the payment of money and the other for the conveyance of lands—each of these mutual covenants being the consideration for the other. One party sits down and executes; but the other stops short, and, for some cause, no matter what, does not execute the instrument. It is impossible, I think, to maintain that the party who has refused or neglected to bind himself can set up the instrument as a binding contract against the other party. There was, I think, a condition implied from the nature of the transaction, that the signing of one party should go for nothing unless the other signed also. But whether I have assigned the proper reason for the rule or not, the conclusion to which I have arrived, that the party who signs cannot be bound where the execution is thus incomplete, is not only in accordance with the justice of the case, but is well supported by authority." (See also the cases of *Livingston* v. *Rogers*, 1 Caines, 584, and *Emery* v. *Neighbour*, 2 Halstead Com. L. 145.) These authorities fully sustain the defendant's position. In the absence of any circumstance other than what appears on the face of the instrument, we think it cannot be held that this agreement was executed by the plaintiff's grantors and delivered to take effect like a deed poll, upon their affixing their own signatures, but that it was an inchoate instrument, only to become effective when executed by all the persons named as parties. Certain cases are cited by the plaintiff, in which instruments have been held operative when not executed by all the parties. Without entering into a separate examination of each case, it will suffice to say that they are cases in which, from the terms of the instrument, or from the nature of the subject-matter of the contract, it appeared that it was the intention of the parties who signed to be bound, without reference to an execution by all the parties; or where, by acting under it with a knowledge that it had not been fully executed, the parties had become estopped from denying its obligation upon them. Considered, therefore, as a conveyance, we think the agreement in question was void as against the defendant's grantors, and gave no title to the grantors of the plaintiff.

But it is said that a partition, though not effected by a valid deed of conveyance, may become effectual by a ratification or adoption; and it is claimed that the parties who did not execute this agreement have adopted and ratified the partition made under it, and that thus the partition has become complete, and each of the parties become invested with the full title in severalty to the portions allotted to them respectively. Undoubtedly there are many cases in which partitions made by parol or by defective instruments have been held to have become effectual by the parties taking and holding in severalty, in pursuance of their terms, and dealing with their portions as if owned in severalty. Whether this occurs upon the ground that partition is not strictly a transfer of title, but only a determination of boundaries, which does not require to be effected by deed, or whether it rests upon the principle of estoppel, by which a party who takes the benefit of such a transaction is forbid to say it was not duly effected, is not material to inquire. It may be conceded that the parties who did not sign the agreement have so acted in relation to the property since the partition that, if they should bring an action to recover their former interest in a portion of the ranch not allotted to them, they might be estopped from denying the partition; but does that either show that the agreement is binding in itself upon the defendant's grantors, and a good deed by them, or that *they* are estopped from denying the partition? They have done nothing to ratify or adopt the partition, and nothing appears in the case to bind them to abide by it, unless they are bound by the agreement. They become parties to a written instrument, by which they agree that their undivided interest in certain portions of the rancho shall be transferred to other persons, upon condition (for such we deem to be the effect of the agreement) that such other persons shall also become parties to that agreement, and by the agreement convey to them in severalty a portion of the rancho equivalent to the undivided interest to be surrendered by them. They did not agree that their undivided interest should be transferred on any other terms than that an interest in severalty should be conveyed to them by the operation of that same instrument. This has not been done, and hence the instrument is not operative as against

them, and they have in no other manner transferred their undivided interest in the rancho, nor done any act by which they are estopped from asserting their title to an undivided interest in the whole rancho. All the rights which the defendant's grantors had in this respect, at the time of their conveyance to him, have vested in and may be asserted by him.

We are pressed with the consideration that many third persons may have acquired supposed interests in severalty under the various parties to this partition agreement, and that for this reason it should be sustained. Such considerations are always regarded by Courts as far as they can be without violating legal principles; and it is under such influences that the Courts have gone very far to uphold parol partitions and to apply the doctrine of estoppel. But we have no power to give vitality to void contracts, or to create estoppels where none have arisen from any act of the parties sought to be estopped. Such, we think, would be the effect of a decision that the defendant or his grantors had parted with or are estopped from asserting the title to an undivided interest in the San Pablo Rancho, which it is conceded they had at the date of that agreement.

The judgment must be affirmed.