## McKenna v. Kelso et al.

## Same v. Same.

52b 727
92 153
52b 727
111 209

52 727
Case 2
e138 672

CONVEYANCE: GIFT: INTENTION.

*Appeal from Jackson Circuit Court.*

Tuesday, October 28.

The plaintiffs are the children of John McKenna, and claim that he made to each of them a gift of certain property, and these actions were brought in equity for the purpose of having their title to the property established. The relief asked was resisted by the guardian of said John, who has become insane. The two causes were submitted on the same evidence, and the pleadings are substantially the same. The Circuit Court dismissed the petitions, and the plaintiffs appeal.

*Graham & Cady*, for appellants.

*D. A. Wynkoop*, for appellees.

SEEVERS, J.—Counsel do not disagree as to the law. It is assumed on the one hand, and conceded on the other, that in order to constitute a valid gift there must exist an intent on the part of the donor to make the gift, and a delivery to the donee, or some person for him, of the thing given. The real difficulty in this, and all doubtful cases of this character, is as to the sufficiency of the evidence to establish such matters. No two cases are precisely alike, hence not much aid can be derived from adjudicated cases. *Tallman v. Cook*, 39 Iowa, 402, illustrates this thought. In that case the intention to make the gift does not seem to have been seriously controverted. Whether there had been a delivery of the deed, however, was contested, and the court said: "We ground our view largely upon the fact that the father testifies positively to the intent to deliver, and to the fact of delivery, and there is nothing inconsistent with this intent and fact; the custody of the deed by the father is, under the circumstances, consistent with the idea of delivery, and the delay in recording, under the facts shown, is not inconsistent with it."

We refer to this case, and quote therefrom, because it is claimed the case at bar is largely governed thereby. But the cases are clearly distinguishable. In the cited case the decision turned upon the evidence of the donor as to the fact of the delivery. In the case at bar we do not have the evidence of the donor as to his intent, or the fact of a delivery, because of his insanity, and there is but little evidence as to declarations made by him which tend to show or bear upon his interest, or the fact of delivery. It may be safely said the evidence is confined entirely, on the plaintiffs' part, to what was done by John McKenna, and therefrom his interest is deduced. While on the other hand it is insisted the acts relied on are insufficient, and because of other circumstances have been satisfactorily explained, and shown to be inconsistent with an intent on the part of said John to make either a gift or a delivery, except as to the question of insanity of John McKenna, at the time it is claimed the gifts were made, there is no dispute as to the facts.

In 1871 or 1872 one Monsel was indebted to John McKenna in the sum of $435, for which a second mortgage was given on real estate. Afterward he purchased the first mortgage for $2,475. Whether the $435 was required to make up the last named sum is somewhat uncertain, but we think not, and that the facts are as we have stated them.

Afterward the said John gave Monsel a $100 note for his equity of redemption, and the mortgages were satisfied, and Monsel conveyed, as directed by the said John, the real estate to the plaintiff Mary, who was then nearly eighteen years of age. This was in May, 1873. The conveyance was made without the plaintiff Mary's knowledge, nor was she consulted in reference thereto. The deed was filed for record by said John or by his direction, and never was in Mary's possession. The plaintiff Mary became eighteen years of age in June, 1873, and in October following John McKenna sold said land to one Sprank, without consulting with said Mary in relation thereto. The consideration of the sale does not appear, but at the request of the said John the said plaintiff conveyed the said real estate to said Sprank, and the latter, at the request of John McKenna, executed his note for $2,000, payable on or before ten years, with interest from Jan-

uary 1, 1874, at ten per cent, payable annually to said Mary McKenna. The note was secured by mortgage, which was filed for record by said John.

In February, 1873, John McKenna loaned one Kennedy $1,440, and took his note secured by mortgage for said amount, payable to said Edward H. McKenna, payable on or before six years from date with ten per cent interest payable annually. The said mortgage John McKenna caused to be recorded. The plaintiff Edward was then about fourteen years of age. Neither of the plaintiffs have ever had actual possession of said notes or mortgages. It is doubtful if Edward knew of their existence until three years or more after they were executed.

The defendant Kelso is a lawyer and banker, and seems to be a careful and prudent witness. He has no interest in the event of this suit, except a possible liability for costs. He drafted the mortgage from Kennedy to the plaintiff Edward, and did much business for and with the said John. The latter kept a bank account with Mr. Kelso. The former had a tin box in which he kept his valuable papers, and the same was deposited in Mr. Kelso's bank. In said box he placed the said notes and mortgages. The interest due from year to year on said notes was mostly paid to Kelso, and by him placed to the credit of said John, and paid out on the checks of the latter. A portion of said interest, however, was paid to said John by the makers of the notes, and the same was used by him. No part of it was ever paid to either of the plaintiffs, nor were either of them ever consulted by said John as to the disposition thereof, or in any other respect in regard to said notes or mortgages.

At one time Mr. Kelso paid the plaintiff Mary some money, and informed said John thereof, whereupon the latter got very much excited, and directed Kelso not to let any of his family have any money. At this time Mr. Kelso was receiving interest on the Sprank note. Mr. Kelso, out of abundant caution, and on his own motion, charged John McKenna with the interest received on said notes, and credited the same to the plaintiffs; this cannot prejudice the rights of either party.

The plaintiffs are the children of said John by his first wife, by whom he also has another child who was his favorite, and to whom no gift was made. He has several children by his second wife, who is now living; with her he had frequently difficulties. A divorce proceeding was commenced by her, but it was compromised. He did not exhibit much fondness for his children; he on more than one occasion beat and otherwise maltreated the plaintiffs; his habits were bad, and so was his temper, caused, possibly, by an excessive use of intoxicating liquors, which caused softening of the brain, resulting in insanity. The testimony bearing on this branch of the case is not set out, because it is deemed unnecessary to do so.

The plaintiff Mary testified in relation to the Sprank deed that "I signed the deed; did it partly because he said it was mine. He took me to town, said it was mine, and got me to sign the deed." Except this the evidence is singularly barren of any expressions of John McKenna tending to show he intended to make or had made a gift to either of the plaintiffs, and as to the question of delivery there is not a particle of evidence, unless it can be found in the foregoing statement. Mr. Kelso testifies that the object of

John McKenna in having the aforesaid notes made payable to the plaintiffs was to defeat the claims of his wife to " dower." He learned this from said John.

The mere fact that the notes were made payable to the plaintiffs, coupled with the further fact that John McKenna caused the mortgages to be filed for record, cannot, under the circumstances, amount to a sufficient delivery, for he retained possession of the same, and had and exercised dominion over them. As to the plaintiff Edward, it may be said he was a minor, and that it was right and proper his father should take care of his interests, and that he was the proper custodian of said Edward's property. Conceding this to be true, the same cannot be said of the plaintiff Mary. She had reached her majority, and if the notes had been given to her she was entitled to the interest, but instead of acknowledging the justness of her claim the said John violently objected to her receiving any of said interest.

The notes and mortgages never were delivered to any one for the plaintiffs; they never left the possession of John McKenna, and all the circumstances tend to show that his possession was not for their use and benefit.

We fully believe Mr. Kelso's evidence as to the object and intent of these two transactions on the part of John McKenna. His object was to so place a portion of his property that his wife could not readily reach it while he lived or after his death. But he never intended to make a complete and valid gift to his children; hence there was no delivery, and he used and controlled the supposed gift as his own. The suggestion that he desired to provide for his first wife's children is not entitled to weight, because he made no provision for her other child, who was his favorite.

We fully accord with the finding of the learned judge of the Circuit Court, and the judgment must be

AFFIRMED.