MARY M. DAVIS, Plaintiff and Appellant, v. WILLIAM DAVIS, Defendant and Appellant; N. W. LEVY, Administrator of the Estate of NELSON DAVIS, Appellee.

Delivery of Deed. A husband, threatened with unjust litigation, makes deed to his wife and leaves it with his attorney; after service of summons he records it. She knew nothing of the deed till long after this, and then she executed a written acceptance. The deed reserved control for life. Grantor kept all income, and subsequently conveyed to another. *Held*, the recording did not constitute a delivery of the deed. Acceptance of said deed has no effect.

SAME: AGREEMENT TO CONVEY. It does not aid a deed not intended to be, and therefore not, delivered, that grantor has promised, on consideration, to convey the land embraced in such deed. *Cecil v. Beaver*, 28 Iowa, 246; *Tillman v. Cooke*, 39 Iowa, 402; *Palmer v. Palmer*, 62 Iowa, 204, and *Parker v. Parker*, 56 Iowa, 111, distinguished.

Practice: AFFIRMATIVE RELIEF. Whether one whose petition to quiet
6  title is dismissed, and who has no interest in lands, can object to
affirmative relief as to such land, given to one whom she made defend-
ant, is not decided.

Practice in Supreme Court. Where an undenied additional
7  abstract avers that no notice of appeal was served, the appeal of one
who neither joined issue before nor excepted to the decree, will be
dismissed.

*Appeal from Cedar District Court.*—HON. J. H. PRESTON,
Judge.

MONDAY, OCTOBER 15, 1894.

ACTION to quiet title. Decree for defendant Levy,
administrator. Plaintiff and defendant Davis appeal.
*Affirmed.*

*Wolf & Hanley, A. P. McGuirk, E. F. Richman*
and *Sturdevant & Sturdevant* for appellant Mary M.
Davis.

*J. E. Hume* for appellant William Davis.

*J. Carskadden* and *Wheeler & Moffit* for appellee.

KINNE, J.—I. The pleadings in this case are volu-
minous, and the case will be best understood if we
briefly make a summary of the claims of the several
parties, as disclosed by the record. Plaintiff claims,
in her action to quiet title, to be the fee owner of sev-
eral hundred acres of land situated in the counties of
Cedar, Muscatine, and Story, in this state, by virtue
of a warranty deed, of date March ——, 1890, from one
Nelson Davis, her husband, since deceased. She makes
William Davis, his wife, and Levy, administrator of
said Nelson Davis, defendants, as persons claiming
title adversely. Levy, as administrator, claims that
plaintiff has no interest in the lands; that no deed for
them from Nelson Davis to her was ever delivered to,
or accepted by, her; that the deed to her was without
consideration, and fraudulent as to Nelson Davis' cred-

itors; that if such a deed was made to her it was only for the purpose of putting the naked title in her, to avoid contemplated results from certain unjust litigation against him; that said Davis died a resident of the state of Kansas, and that claims to the amount of thirty-five thousand dollars have there been legally allowed and established against his estate, and that his estate, exclusive of the lands in controversy, amounts to but seven thousand dollars; that his estate is insolvent. He asks that the deed to plaintiff be set aside, and the land decreed to belong to the estate, and ordered sold to pay said claims. He also sets up his appointment as administrator in Kansas, and Muscatine county, Iowa. William Davis and wife claim that plaintiff has no title to the land, that the deed was never delivered to her, and aver that William Davis owns the land by virtue of a warranty deed from Nelson Davis, his father, dated September 19, 1890; that, if Nelson Davis made the deed to plaintiff, it was only to place the title temporarily in her, to avoid threatened, unjust demands of one Mary J. Concklin. Plaintiff, after denying the claim of Levy as administrator admits the allowance of a claim, by the probate court of Sedgwick county, Kansas, in favor of the children of Nelson Davis, for thirty-one thousand, four hundred and eighty dollars, and pleads that said allowance was procured by fraud, and conspiracy to cheat and defraud her. She questions Levy's right to maintain his cross bill. As to William Davis' claim, plaintiff denies it, and says, if such a deed was executed and delivered to him, it was for the express purpose of defrauding plaintiff, and so received by him, and with notice on his part that plaintiff was the owner and in possession of the lands, and that defendant is not a *bona fide* purchaser for a valuable consideration. After the conclusion of the trial, and upon the court's announcement that he would dismiss plaintiff's peti-

tion, and before final decree was entered, Levy, administrator, amended his cross bill, alleging that William Davis' claimed title to the lands in controversy was void, and asking that his deed be set aside. He made said Davis a party thereto, and he was represented by counsel appearing for him. The court entered a decree dismissing plaintiff's petition; found for Levy, administrator, and against William Davis and his wife; established the claim of the children of Nelson Davis for thirty thousand dollars, with six per cent interest thereon from April 10, 1891, against the estate of Nelson Davis, and ordered the land sold for the payment of claims against the estate of Nelson Davis.

II.   The main question in this case is as to whether the deed under which plaintiff claims title was ever delivered to her. As bearing upon this question, it becomes necessary to refer to the facts disclosed by the record. Nelson Davis, whose real estate is in controversy, lived near Wilton, in Muscatine county, Iowa, from about 1850 to the year 1873. In 1873 he removed to Kansas, and died in Wichita in 1891. His entire estate, at the time of his death, consisted of some seven thousand dollars, a part of which was in money on deposit in Iowa banks in the name of one Winn. He was seventy years old when he died. He had been married three times. His second wife, Leona Davis, of Wichita, Kansas, and the mother of his six children and heirs, obtained a divorce from him in that state in 1883. In the divorce case the court decreed to her, for life, four hundred and eighty acres of land which Davis then owned in Kansas, the remainder to go to her children. Deceased became acquainted with the plaintiff in New York City in December, 1887, and married her the following January. He took her to Colfax, Iowa, where they remained a few weeks, and then they went to Europe, returning in the fall of 1888. In November of

that year they went to California, and he purchased
property at Siminapolis, Ventura county, which he
afterward conveyed to plaintiff.   They lived there until
the summer of 1890.   In February, 1890, Davis visited
Muscatine county to look after a claim of twenty-five
thousand dollars against one Abbott, and to attend to
renting the land in controversy at Wilton; and while
there, one Mary J. Concklin, with whom it appears
Davis had been unduly intimate before his last mar-
riage, threatened him with a suit for breach of promise
of marriage.   Davis appears to have been an exceed-
ingly penurious man, and was much annoyed by the
threatened litigation.   He, on March 4, 1890, executed
and acknowledged the deed under which plaintiff claims,
and left it in the hands of D. C. Cloud, of Muscatine,
who was an old-time friend, and his legal adviser.   This
deed remained there until March 20, 1890.   On March
19, 1890, Davis was served with an original notice of
suit by the Concklin woman, claiming fifteen thousand
dollars for breach of promise.   The next morning he
got the deed from Cloud, and filed it for record in Mus-
catine county.   He afterward called for the deed, and
took it away from the recorder's office.   This deed was
never in fact in the plaintiff's possession or under her
control.   Several months after the filing of the deed the
Concklin suit was settled.   Davis returned to California
in May, 1890, and on June 10, 1890, plaintiff com-
menced an action against him for divorce on the ground
of cruel and inhuman treatment, and alleged in her bill
that Davis was possessed of thirty thousand dollars in
moneys and credits, and of over two hundred and fifty
thousand dollars of Iowa lands, stocks, etc., and that
she was in indigent circumstances, having only thirty-
three acres of land at Siminapolis, which was not pro-
ductive.   July 5, 1890, and while this suit was pending,
Davis came to Muscatine county, and conveyed the
land in controversy to one Bacon; and, on the eigh-

teenth of the following September, Bacon quitclaimed the land back to Davis, and on the same day Davis made a conveyance of it to his son, the defendant, William Davis, taking a mortgage back for thirty thousand dollars of the purchase money. July 19, 1890, plaintiff filed an application for alimony in her divorce suit, in which she still claimed Davis was the owner of the Iowa land and certain other property. On this showing she was allowed alimony and counsel fees. The divorce case was heard on November 17, 1890, Davis not appearing. It resulted in her favor, and on January 16, 1891, a decree was entered in which she was awarded two hundred dollars for attorney's fees, and one hundred dollars per month for herself from November 18, 1890. About a week prior to the trial of the divorce case, plaintiff was informed by her California attorneys of the execution of the deed to her, and at their instance she executed a writing accepting it, and also entered into an agreement with said attorneys whereby she was to convey to them one half of the premises in controversy in case they recovered the same for her, and quieted the title in her. The fact that plaintiff had been deeded this Iowa land by her husband seems to have been kept from the knowledge of the court that granted the divorce. Davis died in Wichita, Kansas, and defendant Levy was there appointed as administrator of his estate, and was afterward appointed as ancillary administrator by the district court of Muscatine county, Iowa. Claims amounting to some thirty-four thousand dollars were filed and allowed in the Kansas probate court. Among the claims allowed in the Kansas court was one for thirty-one thousand, four hundred and eighty dollars, based upon the following instrument:

"WICHITA, KANSAS, September 12, 1883.

"I owe my children, William Davis, Franklin Davis, Nelson Davis, Melisia Davis, Henry Davis, and Lucy Davis, thirty thousand dollars ($30,000), payable at my death.                    NELSON DAVIS."

III.   There can be no question that Nelson Davis executed, acknowledged, and filed for record the deed under which plaintiff claims title, and took it from the office after it was recorded.   It was never delivered to plaintiff, or to anyone for her.   The delivery in this case is claimed from the fact that the grantor executed and filed the deed for record. In determining as to whether the acts relied upon constitute a delivery of the deed, we must ascertain what the intention of Davis was with reference thereto.   Did he intend to make a complete transfer of title of the property by filing the deed for record, or was his act for the accomplishment of some other purpose?   We have always held in such cases that the question of the grantor's intention was of controlling importance in determining whether his acts should be held to constitute a delivery so as to pass title.   *Robinson v. Gould*, 26 Iowa, 93; *Craven v. Winter*, 38 Iowa, 471; *Steel v. Miller*, 40 Iowa, 406; *McKenna v. Kelso*, 52 Iowa, 727, 3 N. W. Rep. 152; *Tallman v. Cooke*, 39 Iowa, 402; *Parker v. Parker*, 56 Iowa, 111, 8 N. W. Rep. 806; *Richardson v. Grays*, 85 Iowa, 149, 52 N. W. Rep. 10; *Bank v. Haney*, 87 Iowa, 101, 54 N. W. Rep. 61; *Hutton v. Smith*, 88 Iowa, 238, 55 N. W. Rep. 326. Appellant Mary M. Davis relies upon the following and other cases as supporting her contention.   *Cecil v. Beaver*, 28 Iowa, 246; *Tallman v. Cooke*, 39 Iowa, 402; *Palmer v. Palmer*, 62 Iowa, 204, 17 N. W. Rep. 463; *Parker v. Parker*, 56 Iowa, 111, 8 N. W. Rep. 806.   In the case first cited the deeds to minor children were executed at the instance of their father, who, "without explanation at the time, caused the instruments to be recorded."   In this case the very question involved in the case at bar was not decided, for the court says: "What the law would be if the petition had made the proper case, and the verbal evidence had shown (conceding its admissibility) that the plaintiff's sole purpose

in making the conveyance to the children had been to place the land beyond the peril of loss from expected and unjust litigation, there is no occasion to examine." In *Tallman v. Cooke*, 39 Iowa, 402, the deed was made to a minor when he was about four years old, but was not recorded by the father until about ten years thereafter. The father testified that delivery was intended when the deed was executed, and the court so held. *Palmer v. Palmer* was an action to set aside a deed by the widow of William Palmer, deceased. In 1881 she and her husband executed the deed in question to the defendant, a son of William Palmer by a former wife, from whom he had been divorced. In February, 1882, William Palmer died. Plaintiff claimed she was induced to sign the deed by fraud of the husband and of the defendant Daniel, and that the deed, though recorded, was never delivered. It appeared that there was no consideration for the conveyance, and no reason shown for its being executed. The court found that fraud had not been established. It appeared that after this deed was recorded it was taken from the recorder's office by the grantee. It was held that, though the grantee was a minor when the deed was executed, yet as it was absolute in form and beneficial in effect, and the grantor had voluntarily caused it to be recorded, it was in law a sufficient delivery to pass title, and that in such a case actual, manual delivery and formal acceptance were not necessary. In *Parker v. Parker* the deed was made at the instance of the husband to the wife, but was left with other papers of her husband, and found by her and placed upon record after they had been divorced. The court held that the evidence showed that the grantor intended by the deed to surrender all control and dominion over the property, and that delivery to her husband with intention that it should take effect as a conveyance, and the acceptance of the deed, passed the title.

Many cases are cited by appellant to the effect that a deed executed to a minor, where it is beneficial in its character, and with the intention that it shall be considered as delivered, or when it is thus executed and placed on record with the intention to pass title, will be effectual to accomplish that purpose, and that assent and acceptance will be presumed in the absence of evidence showing dissent. *Mitchell v. Ryan*, 3 Ohio St. 377; *Folk v. Varn*, 9 Rich. Eq. 303; *Wall v. Wall*, 30 Miss. 91; 2 Washb. Real Prop. 31, 582; *Compton v. White*, 48 N. W. Rep. (Mich.) 636. In principle the cases of *McKenna v. Kelso*, 52 Iowa, 727, 3 N. W. Rep. 152, and *Stevens v. Castel*, 63 Mich. 111, 29 N. W. Rep. 828, are like the one at bar. From what the grantor, Nelson Davis, said and did at the time he executed and filed the deed for record, and from the circumstances then surrounding him, we may be able to ascertain with what intent he then acted. It appears that prior to his last marriage he had been unduly intimate with a woman named Concklin; that in March, 1890, he was in Iowa, looking after his lands and other business interests; that he knew that the Concklin woman was about to sue him for fifteen thousand dollars for alleged breach of promise of marriage; that he went to the office of his attorney, Hon. D. C. Cloud, in Muscatine, told him of the threatened suit, said it was a blackmailing scheme, and that the woman should not have any of his property,—that he would convey it all to his wife. At the time the deed was executed the grantor said nothing about making further provision for his wife, but did say that he had already provided for her. He said there was no need of his wife knowing anything about the matter; that "she will deed it back to me whenever I want it; I don't mean that they shall have any money on this blackmailing scheme." Such were the circumstances surrounding the execution of the deed.

It was left with Mr. Cloud until March 20, when Davis called for it and filed it for record. The notice of the Concklin woman's suit had been served upon Davis on the day before. The suit was settled in September of the same year. The testimony as to what the grantor said and did when he made and filed the deed for record is not contradicted. We think it clearly appears from all the evidence surrounding the transaction that Davis, in executing and filing the deed, had no thought of passing the title to the land therein described to his wife. On the contrary, his evident and oft-expressed intention was to avoid the threatened peril to his property from the breach of promise suit. While there is evidence as to statements claimed to have been made by Davis, sometime after he executed and filed the deed for record, to the effect that he had given the land to his wife, yet, in view of all the circumstances, we conclude that the deed to her was never delivered, and was not, therefore, effective to pass the title to her for any purpose. She never knew that the deed had been made until long afterward, and then did not learn the fact from her husband. If he had intended to thus give her the land, it would be reasonable to suppose that he would at some time advise her of it, but he never did so. Again, the conditions of the deed itself, reserving in himself the agency and control of the land during his lifetime, and his subsequently conveying it to another; his control of its income; his retention of the deed, and concealing from his wife the fact of its execution, are circumstances, while not conclusive as showing the grantor's intention, all in harmony with the intent evidenced by Davis in his conversation with the witness Cloud, and tend strongly to rebut the presumption which the law raises from his act in filing the deed for record. We place but little weight upon the claimed declarations of the grantor as to his intentions, they

having been made long after the execution and filing of the conveyance. They were not a part of the *res gestae*. They were made to persons having no interest in the matter, and, if admissible (a question we do not determine), they were made at a time and under circumstances when it was natural that Nelson Davis should attribute his act to motives other than a desire to escape from the legal clutches of his late paramour.

Certain letters from Davis to his wife were introduced in evidence. We need not determine the question of their admissibility, for, if competent, they contain nothing which tended to show that Davis intended to give the land to his wife. While, as to minors and others incapable of accepting a conveyance, the law will presume an acceptance, yet in case of an adult grantee, who rests under no legal disability, the general rule is that there must be, not only delivery, but an acceptance, of the deed. In this case a written acceptance was executed by the grantee long after the execution and filing of the deed for record. This acceptance was ineffectual. The acceptance, to be available, must have been of the thing offered, of what the grantor intended to convey; and if, as we hold, there was no intention by the deed to pass the title to plaintiff, there was nothing to accept. By no act on her part could she affect the intention of her husband in the execution of the deed. Were it otherwise, she would, in legal effect, be both grantor and grantee.

IV. Appellant Mary M. Davis insists that the conveyance should be sustained because it was executed pursuant to a previous verbal promise of the grantor, for a consideration of several thousand dollars received by the grantor from her. We shall not enter into an extended discussion of the evidence relating to these claims. As we have said, the deed was executed to avoid the possible result of the Concklin suit—to put his property beyond the reach

of that litigation. That was the sole motive which impelled Nelson Davis to make it, and it matters not what, if any, promise he made to execute a deed to his wife, inasmuch as it was not executed in fulfillment of it. Furthermore, and without rehearsing the facts disclosed in this record, we may say that we are unable to give credence to the exceedingly improbable tale of plaintiff, relating to her loan of money to her husband. Much of the testimony touching that matter was incompetent, but, if we should treat it as properly before us, it fails to establish what is claimed for it.

V. Plaintiff contends that the administrator, Levy, can not maintain his cross bill; that, though plaintiff made him a party, his right was limited to defending as to the deed; that the allowance of the thirty thousand dollar claim by the probate court in Kansas is not binding on her, and that it was obtained by fraud and collusion. As, for the reasons heretofore given, plaintiff holds no title to the land in controversy, and as, by reason of being divorced, she can have no dower interest in said lands, we are not called upon to decide the question thus presented.

VI. Plaintiff files a motion to strike the argument of William Davis from the files, and to dismiss his appeal, because no appeal was ever taken, and because there was no issue between him and Levy, administrator. The cross petition of Levy, administrator, as amended, charged that the deed to William Davis was void. While William Davis appeared thereto, he filed no pleading taking issue as to the matters thus set up against him, nor did he take exceptions to the entry of a decree against him. So far as the record shows, he made no objection to the decree. In an additional abstract he asserts that he appealed and served proper notice thereof, but that is denied by appellant Mary M. Davis. In a further amendment filed by William Davis, it does not appear that any

notice of appeal was served upon Mary M. Davis or her attorneys.   In view of this condition of the record, we think the motion should be sustained.   The decree of the district court is AFFIRMED.