EDWARD BOUSSELOT et al., Appellants, v. E. P. BOUSSELOT et al., Appellees.

**DEEDS: Delivery—Overthrowing Presumption Arising from Possession.** The presumption that a deed in the possession of the grantee has been delivered is entirely overcome by a showing by grantor that grantee's possession was for the sole purpose of securing the signatures of other part owners of the property as a condition to *final* delivery, and that such condition was not complied with.

**PLEADING: Issues, Proof, and Variance—Mutually Conceded Issues.** An issue will be treated as in the case, even though it is raised indirectly and in the *prayer* only, when, in the trial, the parties mutually treated the matter as at issue.

*Appeal from Clinton District Court.*—A. P. BARKER, Judge.

SEPTEMBER 30, 1922.

SUIT in equity, to set aside a purported deed and to remove a cloud upon the title of plaintiffs. The answer was a general denial and a counterclaim praying for the establishment of the

deed. The trial court dismissed the petition of plaintiffs. They appeal.—*Reversed.*

*E. L. Miller* and *George F. Skinner,* for appellants.

*Wolfe, Wolfe & Claussen,* for appellees.

EVANS, J.—The issues as originally made in the pleadings were somewhat complicated, and involved the rights of others than those who are now interested in this appeal. These complications, however, were simplified at the trial by certain concessions. The only contending parties remaining whose rights we are to consider are Edward Bousselot and Julia Munster, as plaintiffs, and E. P. Bousselot, as defendant. The property in controversy consists of a farm of 130 acres. In 1903, the defendant E. P. Bousselot was the owner of such farm, and conveyed the same to his six children as tenants in common, subject to a life estate in himself, which was evidenced by an instrument then and there executed by the children to him. These six children were Edward, William, Robert, Cora, Frances, and Julia, three sons and three daughters. The daughters are married, and appear in the record at Cora Dralla, Julia Munster, and Frances Hurl.

1. DEEDS: delivery: overthrowing presumption arising from possession.

In 1912, the defendant caused to be prepared a joint quitclaim deed, wherein all of his children were named as grantors of such property, and himself as grantee. Without any preceding negotiations on the subject, he presented such deed to each of his children, singly and in succession, and requested the execution thereof. The deed was signed on successive dates by four of the children. These were Edward, Cora, Julia, and Robert. It was also presented to the other two children, William and Frances, each of whom refused to sign. We infer from the record that these six children resided in different localities. Upon the refusal of William and Frances to comply with the father's request, the subject seems to have been dropped from the consideration of all the parties, and nothing further was ever done pertaining to the matter until the year 1919. In such year, the plaintiffs herein learned that the defendant was

claiming to hold the title to four sixths of the property, pursuant to the deed executed by them, notwithstanding that William and Frances had refused to sign. The particular occasion for this discovery was that the defendant E. P. Bousselot had entered into a contract of sale with the defendant Porth for the sale of the farm, and that William and Frances had joined in such contract on their own behalf, as parties thereto. The general purport of the contention of the plaintiffs is that they never consented either to the execution or to the delivery of the deed in question, except upon the condition that *all* the children should sign the deed. The net result of such a condition is to say that, though the deed was signed, yet it never was delivered. It is readily manifest that, if it was the understanding when *one* signed that *all* were to sign, such a condition would be substantial and material, and would bear very naturally upon the motives and interest of the signer. If all were to convey back to the father the common property, they were still the expectant heirs in equal interest, and, in the absence of a will, all would ultimately realize, by operation of law, the very benefits attempted to be conferred upon them by the deed originally delivered to them by the father. If some were to convey and others were to refuse, the refusing heirs would stand in a position to inherit from the father in equal shares the very property conveyed to him by the willing ones.

The real issue in the case, therefore, is largely one of fact: Was there an unconditional delivery of the deed on the part of plaintiffs? Rules of presumption inhere in this question, and only to that extent is any question of law presented. To this question we pass.

I. The substance of the evidence on behalf of Edward Bousselot is that his father presented to him the deed, with a statement that it was necessary for him to obtain it in order to enable him to perform a certain previous contract with the son William, and that he could not or would not use the deed unless all the children signed it. Edward was the first to sign. Though the defendant purported to deny generally that there was any condition attached to the signing or delivering of the deed, he did testify specifically as follows:

"Well, in the first deed I had given to the children I had

supposed that the whole place was included. Riley Lehman was the one that drawed the deed, and I asked him to put the whole thing in, and I supposed it was, and I even brought the deed down to you to examine, and you thought it was. Then I told the children it would be necessary for me to have them to deed back to me the place, so that I could deed it—make a deed to Willie for his place. Well, they all signed it excepting two, and they wouldn't sign, * * * We examined the records, and found out that William's place was not concerned. I had told the children that they would have to all sign, says I, in order for me to give Willie a deed, and I had supposed that they would have to anyway. That's all I told them about it. They didn't know whether all the land was included or not. They hadn't seen the deed. I told them they were deeding back the whole place at that time. * * *

### Cross-examination.

"I told him that it would be necessary to sign the deed which I presented to him, in order to enable me to reconvey that property to William. That is, the 80 acres. I told Edward that it would be necessary for him to sign the deed so that I could convey the 80 acres. I found out afterward that it wasn't necessary for him to do so. I don't know as I said anything to him about getting the other children to sign at that time. At that time I believed it was necessary to get all the children to sign it, and I supposed they would. I might have told him it was necessary to get them all to sign it—it was necessary for them all to sign. I supposed it had to be signed by all of them, in order for me to convey. I don't know whether I told Edward that or not. I probably did. I wouldn't say. When I had the conversation with Mrs. Munster at the time I presented the deed to her, I told her the same thing. I told her they all had to sign it, in order for me to convey this to Will. I told Mrs. Munster they all had to sign the deed which I presented to her,—that quitclaim deed,—in order for me to make the conveyance to Will of the property he purchased from me. Then she signed the deed. I did not tell Edward, at that time I asked him to sign the deed, that, if the children didn't all sign it, I wouldn't use it, nor that I couldn't use it. Of that fact I am positive. Neither did I tell Mrs. Munster about that."

It is made to appear that, at the time this deed was presented to the signing grantors, the defendant believed he had included in his previous conveyance to them the 80-acre tract upon which William had a claim. This was an error on his part. Such 80-acre tract was not included at all in the original conveyance from the defendant. This error was discovered and made clear to the defendant at the time of the refusal of William and Frances to sign the quitclaim deed, when presented to them. It may fairly be said, upon the record, that this discovery appeared at the time to cause the abandonment by defendant of his request for a deed. Taking the testimony of the defendant himself, as it responds to the testimony of the plaintiffs, it must be said that it was the expectation both of the defendant and of the plaintiffs, at the time of their signing, that all the heirs would sign the same joint deed. It is also clear from the testimony of the defendant that the purpose of the defendant in obtaining the deed was a formal one, viz., to enable him to convey to William an unclouded title to the 80-acre tract. This purpose was predicated upon a mutual error, and such error was discovered before the purpose was carried out. This is very material, as passing upon the question of delivery. While it is ordinarily true that possession of a deed by the grantee is presumptive evidence of delivery, yet this presumption is wholly overcome when it is made to appear that the possession was acquired for other purposes. Clearly, there was no formal or intended delivery of the deed by Edward at the time of his signing, though there was a taking and holding of possession by the grantee. But this possession was clearly for the immediate purpose of obtaining the signatures of the other heirs. If we assume that the continuance of such possession by the grantee after the execution of the deed by the other heirs would have been a sufficient delivery on the part of all, yet the fact remains that such delivery could take place as to all the heirs only after it had been signed by all of them. Did the plaintiff Edward intend to make a separate and independent delivery on his own behalf, regardless of the conduct of the other joint grantors? The affirmative evidence would not warrant such a conclusion. There is no legal presumption that the possession of the grantee under the circumstances here shown

was intended as a final delivery of any completed instrument. It is always competent to prove the conditions, if any, under which the possession of an instrument is given to a grantee or payee. *Garner v. Kratzer,* 173 Iowa 292; *Lavalleur v. Hahn,* 152 Iowa 649; *Carney v. Miller,* 187 Iowa 927; *Haviland v. Haviland,* 130 Iowa 611; *Davis v. Davis,* 92 Iowa 147; *Overman & Brown v. Kerr,* 17 Iowa 485; *Sheehy v. Scott,* 128 Iowa 551.

In the *Davis* case, we said:

"We have always held, in such cases, that the question of the grantor's intention was of controlling importance in determining whether his acts should be held to constitute a delivery, so as to pass title."

In the *Haviland* case, we said:

"The evidence fairly shows that the deed was executed with the express understanding that it was not to be effective or to be delivered until the other children executed it, and thereby conveyed their interest in the land to the mother; and this they never did. Without this, the instrument was not complete, and conveyed nothing, even though delivered."

Our early case of *Overman & Brown v. Kerr,* 17 Iowa 485, is quite instructive at this point. We said therein:

"He does insist that the delivery was complete as to the three Overmans; and if so, the instrument would convey at least an undivided three fourths of each of the lots embraced in the deed, and among others, the lot in controversy. The weight of evidence is against the defendant on this point. We mention the following circumstances:

"1st. The proposition was a joint one by the Overmans and Brown, to convey a full title to the lots, and not an undivided three fourths.

"2d. The deed as prepared contemplated that all of the plaintiffs should execute and acknowledge it.

"3d. There was no agreement or talk between plaintiffs and commissioners about receiving and accepting a deed, unless signed by all."

Likewise, the *Sheehy v. Scott* case, 128 Iowa 551. We quote therefrom:

"It is insisted, however, that he previously had conveyed his interest to De Camp. A deed from the ten children to De

Camp had been signed by half of them, and was received by intervener from a brother on the 15th day of June, with instructions, after signing, 'to forward to the next one.' He did so, with directions 'to rush the deed along.' It was returned to De Camp after the levy of the writ of attachment, and shortly thereafter he remitted to each, other than George E. Scott, his share of the deferred payment, and to him a part, and moved into the house with his family July 9th. The circumstances were such as to indicate an intention on the part of George E. Scott that the deed be delivered upon being signed and acknowledged by all the children; but this did not happen until after the levy of the writ of attachment. An instrument will not be regarded as delivered when anything remains to be done by the parties who propose to deliver it. *Overman v. Kerr,* 17 Iowa 485; *Hutton v. Smith,* 88 Iowa 241; *Tewksbury v. O'Connell,* 21 Cal. 60.''

We reach the conclusion that, at the time of the signing by Edward, there was a condition precedent to delivery that all the other heirs should likewise sign. Such condition never having been performed, and no act thereafter ever having been done on the part of Edward which could be construed as a delivery, it necessarily results that there was no delivery. The fact that no consideration passed at the time of such signing, and that none had been agreed upon, is also a material circumstance tending to sustain this conclusion. The same conclusion must be reached as to the circumstances attending the signing by plaintiff Julia Munster.

II. The point is made by the appellee that the plaintiff failed to plead nondelivery, and that, therefore, he is not entitled to predicate his case thereon. It is true that nondelivery was not one of the direct allegations of the petition. The petition, however, did allege that the execution was conditional. Under the facts appearing in this case, *nondelivery* and *conditional delivery* amount to the same thing, it being undisputed that the condition was not performed. It further appears that an attempt was made in the petition to plead *nondelivery* by including the same in the prayer of the petition, as follows:

2. PLEADING: issues, proof, and variance: mutually conceded issues.

''Wherefore plaintiff asks that the deed above referred to,

if such a deed is now in existence, be declared void and of no effect, because the signatures, as above stated, were obtained under a condition, which condition was never fulfilled, and *because of nondelivery of said deed.*"

It is true that this was not a good pleading, and that it was not appropriate to incorporate an allegation in the prayer of the petition. But the petition was in no manner attacked by the appellee. It was open to the appellee to have assailed the petition in this regard, but he did not do so. The grounds of relief claimed are made to appear clearly and unequivocally in the petition as a whole, though in improper form. The case was tried on the theory here indicated. Upon the whole record, therefore, we are not disposed to find any distinction between *nondelivery* and delivery upon an unperformed condition.

III. The defendant pleaded that, at the time he conveyed the property to his children, it was orally agreed that they should reconvey to him upon request. He testified, over objection, in support of this allegation. His testimony in this respect was strongly contradicted by the plaintiff. Whether such oral evidence by the defendant was admissible at all, in view of the fact that a written contract was entered into between him and his children at the time of the conveyance, we will not now consider. We are satisfied that the state of the evidence on the question would not justify a finding in favor of the defendant upon that issue.

We reach the conclusion that the appellants are entitled to the relief prayed. Under their stipulation, the decree to be entered in their favor shall in no manner disturb the title of the purchaser, Porth. The rights of the plaintiffs are confined to an adjudication between them and the defendant, to the effect that the defendant is entitled to the life use of the proceeds of the sale of the land, after which, as remaindermen, the plaintiffs will become entitled thereto.

The decree entered below is, accordingly,—*Reversed.*

Weaver, Preston, and De Graff, JJ., concur.