BANK OF UNITED STATES, Plaintiff, *v.* CHEMICAL BANK AND TRUST COMPANY, Defendant.

Supreme Court, New York County, December 2, 1930.

*H. Louis Jacobson*, for the plaintiff.

*John B. Kelly* [*Carroll G. Walter* of counsel], for the defendant.

WALSH, J. This action is brought to recover the sum of $34,500 and interest, alleged to be due the plaintiff under a guaranty alleged to have been executed and delivered by defendant's testatrix to plaintiff on July 6, 1927. The guaranty reads as follows: " New York, 7/6, 1927. The Bank of United States, New York City,

N. Y. For and in consideration of one dollar ($1.00), the receipt of which is hereby acknowledged, and of your extending credit accommodations to Edward Rowan, Inc., hereinafter designated as borrower, we hereby jointly and severally guarantee to you the payment of any liability of said borrower to you heretofore, now or hereafter incurred, including any overdraft, promissory note, or amount authorized to be charged to the borrower, and all liabilities at any time incurred by said borrower to you, and agree to fully indemnify you against any loss or damage you may sustain on account of such liabilities, and we hereby jointly and severally agree to pay you immediately without demand any sum due or which may become due to you from said borrower whenever the latter shall fail to pay the same. This shall be a continuing guaranty and agreement of indemnity for any liability of the said borrower to you heretofore or hereafter incurred until written notice from us to you to the contrary shall be actually delivered to and acknowledged by you in writing, and this guaranty and indemnity shall be both supplemental and additional to any other guaranty or guaranties, indemnity or indemnities and security or securities heretofore or hereafter received by you from the borrower, the undersigned or any other person or persons to secure any liability of said borrower, and the liability of the undersigned hereunder shall not be affected or impaired by reason of the taking or releasing of any such other guaranty or guaranties, indemnity or indemnities, or security or securities without any notice to us. Notice of your acceptance of this guaranty and notice of transactions or liabilities contracted or incurred by said borrower under this agreement, and of the default of said borrower, if any, are hereby waived. Margaret J. Rowan, L. S. Witness: Edward H. Rowan."

The complaint alleges that, relying on said guaranty, plaintiff extended credit accommodations and loan to Edward Rowan, Inc., $34,500, evidenced by seven promissory notes, which plaintiff discounted for it. That upon the maturity of the notes, they were not paid and renewal notes were given on various dates between November 21, 1928, and January 16, 1929. Margaret J. Rowan died on March 19, 1928, which was before the last set of renewal notes was given to the plaintiff. Though the defendant claims that the evidence does not establish that the guaranty was signed by its testatrix, I find that it was so signed.

The guaranty on its face states that " we hereby jointly and severally guarantee " and " we jointly and severally agree to pay," and also that it is to continue " until written notice from us to you." By reason of these recitals, defendant contends that it was intended to be a joint and several obligation, and, as it never was signed by

any other guarantor, it never became binding on its testatrix. The general rule is that one signing and delivering an instrument is bound by its obligations although it was not executed by all parties for whose signature it was prepared, where there is nothing to indicate an intention by him who signed it that he was not to be bound until it was signed by the others, which intention is brought home to the obligee. When the intent is manifested that the contract is to be executed by others than those who actually signed it, it is inchoate and incomplete and does not take effect as a binding contract unless executed by all the parties. *Prima facie*, the contract is that of defendant's testatrix, and in the event she meant not to be bound by it she should have accompanied delivery of it with an expression of such intention. (*Dillon* v. *Anderson*, 43 N. Y. 231, 235; *Parker* v. *Bradley*, 2 Hill, 584; *People* v. *Lee*, 104 N. Y. 441, 445.)

It rests upon the person executing the instrument to establish that he was not bound by its provisions, and that the delivery was to be given in escrow, and not absolute. (*Chouteau* v. *Suydam*, 21 N. Y. 179.) Nothing is shown to warrant the conclusion that the testatrix indicated at the time of the delivery of the instrument that she did not intend to be bound unless other parties also signed. The original notes were not paid and discharged by the taking of the renewal notes. (*Jagger Iron Co.* v. *Walker*, 76 N. Y. 521; *Garfield National Bank of City of New York* v. *Wallach*, 223 App. Div. 303; *Cohen* v. *Rossmoore*, 225 id. 300; 8 C. J. p. 443, § 656, and cases cited.) The extension of time of payment did not release the guarantor. The instrument sued on is a continuing guaranty. It was given to plaintiff bank for the purpose of having it extend credit accommodations to its customer. It is broad in its scope, guaranteeing the payment of " any liability of said borrower now or hereafter incurred, including any overdraft, promissory note, or amount authorized to be charged to the borrower, and all liabilities at any time incurred by said borrower to you."

While no definite rule for the construction of contracts of guaranty can be extracted from the many decisions, each adjudication depending upon its own facts, the cardinal principle to be applied is to read the writing, and, taking its language in connection with the relative position and purpose of the parties, to gather from it their intent as to the questionable part. Here we have a continuing contract, practically unlimited in its scope, given to a bank for the purpose of having it extend credit accommodations to its customer. The rule seems to be that where a guaranty is given to a bank to secure advances on drafts and notes, the guaranty may be construed to apply to successive advances,

acceptances and indorsements, which would be renewed from time to time. The reason for this rule is set forth in *Merchants' National Bank of Whitehall* v. *Hall* (83 N. Y. 338), where, in construing an instrument somewhat similar to the one here under consideration, the court said (p. 343): "The effect of a continuing security is that it applies to any future transaction between the parties that is within the limits of the agreement. The instrument before us is as wide in limit as it could well be. It does indeed specify the party for whose benefit it is made, and the person, Hall, whose dealings with that party are guaranteed. It also engages for the payment, rather than the collection, of the demands against Hall; though that is hardly a narrowing of the liability of the stock. By specifying the plaintiff, a National bank, as the party for whose benefit it is made, an implication arises that the dealings of Hall and the bank are such as are usual in the business of a bank of loan and discount with a borrower from it. This might sometimes operate to limit the liability of the guarantor. Otherwise than by these there are no limits expressed in the assignment by which the operation and effect of it are held in. It specifies no kind of demand, no amount, no length of time of any indebtedness, no length of time for which the stock might be liable. In the last particular it was susceptible of a limit being put upon it, at any time after it was made, at the will of the defendant. She might, by giving notice, have restricted it to the demands actually held by the bank at the time of notice. (*Mason* v. *Pritchard*, 2 Camp. 436; [*Agawam Bank* v. *Strever*] 18 N. Y. [502], *supra*.) As it reads, it is unlimited in period. As it particularizes no demand, it applies to 'debts successively renewed.' (*Merle* v. *Wells*, 2 Camp. 413.) We do not suppose that these words of Lord ELLEN-BOROUGH in that case meant the same as the technical renewals of a matured note by a bank. Those of Judge STORY in *Douglass* v. *Reynolds* (*supra*, at p. 125 [7 Pet.]), come nearer, if not quite to it: 'This being a continuing guarantee, in which the parties contemplated a series of transactions, the defendants must necessarily have understood that there would be successive advances, acceptances and indorsements, which would be renewed and discharged from time to time.' It is not to be denied that a guarantor may be held for all that is done by or for his principal that was contemplated by the contract. (*N. H. Sav. Bk.* v. *Gill*, 16 N. H. 578.) Nor is it to be denied that it is contemplated by a continuing contract of guaranty that the creditor and the principal will carry on the business provided for in the manner in which it has theretofore, to the knowledge of the guarantor, been transacted. (*Id.*; *Reddish* v. *Watson*, 6 Ham. [Ohio] 510.) Further than that, the

contract of continuing guaranty contemplates that the unparticularized transactions of the creditor and the principal will be carried on in the usual course of the business provided for. ( *N. H. Co. Bk.* v. *Mitchell,* 15 Conn. 206; *Combe* v. *Woolf,* 8 Bing. 156, seems to recognize such principle; and so does *Howell* v. *Jones,* 1 Cr. Mees. & Rosc. 97. See, also, *Fox* v. *Parker,* 44 Barb. 541.) The creditor here is a National bank and the dealings anticipated were in a banking business. The general course of business in a community, including the universal practice of banks, is a matter of which the courts may take judicial notice. ([*Agawam Bank* v. *Strever*] 18 N. Y., *supra,* 512.) It is a practice of banks, either with favored customers or with debtors who are not able to pay at maturity, to renew the obligations on payment of a new discount. If the customer is in good credit, it is just as profitable, and quite as convenient, to take a new note, without payment in money of the old one, and to receive from him the price of another discount. If the debtor is not in good credit, it is expedient sometimes to keep his debt along by renewals, taking from him the discount at each extension. These are gifts of time."

The court further (p. 348) recognized the general principle that a gift of time to a principal debtor discharges the surety, but limits the application of the rule to cases where " new arrangements, not contemplated at the time of entering into the guaranties by any of the parties, are introduced; and thus the state of circumstances altered without the contemplation and without the consent of one of the parties."

Here the wording of the guaranty and the circumstances under which it was given indicate that the guaranty was to apply to successive renewals of notes given by the borrower to the bank. Cases to this effect are *Hartwell & Richards Co.* v. *Moss* (22 R. I. 583; 48 Atl. 941); *Burt & Snow* v. *Butterworth* (19 R. I. 127; 32 Atl. 167), and *City Nat. Bank of Poughkeepsie* v. *Phelps* (86 N. Y. 484, 491).

Verdict directed for plaintiff for $34,500, with interest in the sum of $3,290.17. Execution to be stayed thirty days, and defendant to have sixty days to make and serve a case.