[Civ. No. 41007. First Dist., Div. Two. Oct. 16, 1978.]

ROBERT D. ANGELL, Plaintiff and Respondent, v.
W. DANIEL ROWLANDS et al., Defendants and Appellants.

**COUNSEL**

John A. Klein for Defendants and Appellants.

Craig R. Johnston for Plaintiff and Respondent.

## OPINION

**KANE, J.—**

FACTS:

W. Daniel Rowlands[1] was in the market for a house in August 1974. At that time he and his wife owned a home near the City of Santa Rosa (Alpine Road Property). They were looking for a substitute home in the city itself, and were attracted to an open house showing of the home of respondents Mr. and Mrs. Angell (hereafter Hermit Way Property). The Hermit Way Property, held by the Angells in joint tenancy, was listed with the real estate brokerage firm of McClelland and Doherty. Mr. Doherty was active in the negotiations between the Angells and the Rowlands.

On a form entitled "Sales Agreement and Deposit Receipt," dated August 31, 1974, Mr. and Mrs. Rowlands offered to buy the Hermit Way Property. The offer contained a condition: "The above offer is contingent upon buyer selling his ranch home on 40 acres within 30 days from the acceptance of this offer."

Mr. and Mrs. Angell declined to accept this offer, and on September 7, 1974, they submitted a counteroffer in writing. The counteroffer did not contain any reference to buyers (the Rowlands) of the Alpine Road Property as a condition for their performance. This counteroffer was not acceptable to Mr. and Mrs. Rowlands.

Shortly after the time for accepting the counteroffer had expired, the Rowlands contacted Mr. Doherty and indicated that they had been approached by a "rather substantial buyer" for the purchase of the Alpine Road Property, and that the Rowlands felt that they wanted to pursue the purchase of the Hermit Way Property.

Mr. Doherty prepared a new "Sales Agreement and Deposit Receipt" dated September 10, 1974 (hereafter Sales Contract). This document was signed by Mr. Rowlands as buyer, but it was not signed by Mrs. Rowlands. Mr. Angell and Doherty signed it also, but Mrs. Angell did not. The name of Carolyn Jean Rowlands appears twice in typewriting on

---

[1]Carolyn Jean Rowlands also purports to appeal. The record, however, fails to reveal that any judgment has ever been entered as to her. Consequently her purported appeal must be dismissed.

signature lines, indicating a place for her signature. The name of Mrs. Angell does not appear at all on the instrument. The instrument also contained a clause relating to attorney fees.[2]

A separate instrument entitled "AGREEMENT," dated September 11, 1974 (Agreement) was signed by Mr. Rowlands and by Mr. Angell only. The purpose of this instrument was to augment the Sales Contract. Although the Agreement contained signature spaces for both Carolyn Jean Rowlands and Lynda Angell, it was not signed by either of them. With respect to the issue of whether the nonsigning parties were intended to be bound by the instruments, Mr. Doherty testified that that question was never discussed between the parties during negotiations.

After September 11, 1974, there was no contact between the Rowlands and the Angells. Mr. Doherty went to work on Mr. Rowlands' behalf and was instrumental in arranging financing for him for the purchase of the Hermit Way Property. The sale of the Rowlands' Alpine Road Property did not materialize, because the buyer had disappeared.

About three weeks later, on October 2, a letter was sent to the Rowlands by Craig R. Johnston, an attorney, stating that Mr. Johnston's office had been retained by the Angell's for the purpose of enforcing the Sales Contract and Agreement. The letter informed them that their $2,000 deposit had been placed in escrow, asserted that the instruments were valid and binding, and demanded immediate performance of the instruments.

The proposed sale was never consummated. On October 15, 1974, the Angells sold the Hermit Way Property to a third party, Mr. and Mrs. Harley Warner, and at about the same time entered into an agreement to buy another home for themselves from a Mr. and Mrs. J. Clarence Felciano.

The Angells received $1,500 less for their property from the Warners than they would have received from the Rowlands had the sale gone through. To finance the purchase of the Felciano property, the Angells gave a second deed of trust to the Felcianos for $30,000, with the understanding the Angells would pay $22 per day penalty interest if the

---

[2]The clause provides in pertinent part that "In the event legal action is instituted by either party to enforce the terms of this agreement, or arising out of the execution of this agreement or the sale, the prevailing party shall be entitled to receive from the other party a reasonable attorney fee to be determined by the court in which such action is brought."

transaction was not closed by November 1, 1974. The Angells ended up paying Felciano a penalty of $261, because they could not close the transaction as agreed. The trial court found that as a proximate result of the refusal of defendant W. Daniel Rowlands to perform the contract, Angell was required to, and did, pay Felciano the sum of $261.

Based upon the foregoing facts, the trial court, sitting without a jury, found appellant guilty of breach of contract and in its judgment awarded damages in the sum of $1,761 and attorney's fees in the sum of $900 in favor of respondent.

LEGAL ISSUES:

1) Was there a binding contract between the Rowlands and the Angells?

2) Were the consequential damages of $261 awarded by the trial court to Angell valid as liquidated damages?

DISCUSSION:

■ 1) Appellant Rowlands contends that since only he and respondent Angell signed the instruments in dispute, there can be no binding contract for the sale of the Hermit Way Property.

There appear to be two lines of cases on the question of whether all parties purported to be bound by a contract must sign the instrument before it shall be binding on any.

One line of cases is based on *Tewksbury* v. *O'Connell* (1862) 21 Cal. 60, declaring the rule that a contract is not complete and binding until it is signed by all of the parties who are purportedly bound by it (see also *Barber* v. *Burrows* (1876) 51 Cal. 404; *Jackson and Thomas* v. *Torrence* (1890) 83 Cal. 521 [23 P. 695]; *Olson* v. *Lovell* (1891) 91 Cal. 506 [27 P. 765]).

The other line of case authority is based on *Cavanaugh* v. *Casselman* (1891) 88 Cal. 543 [26 P. 515], which holds that an agreement is valid without the signature of all the parties purportedly bound by the agreement *unless* there is an express intention indicated that there will be no binding contract if all parties do not sign.

As the *Cavanaugh* court put it, " 'If by parol stipulation, or *a fortiori* if by the writing itself, the contract was not to be deemed complete until other signatures should be added, it without such addition will not bind those who have signed it; but if nothing of this appears, the parties signing will be holden, though even on the face of it the signatures of the others were contemplated by the draughtsman.' " (P. 550; see also *Kaneko* v. *Okuda* (1961) 195 Cal.App.2d 217, 225 [15 Cal.Rptr. 792]).

The case of *Winter* v. *Kitto* (1929) 100 Cal.App. 302 [279 P. 1024], mentioned both lines of cases and rejected the *Tewksbury* line, while adopting the *Cavanaugh* line, by stating, "It has been held that where an instrument has been executed by only a portion of the parties between whom it purports to be made it cannot be enforced against those who have executed it (*Tewksbury* v. *O'Connell*, 21 Cal. 60; *Barber* v. *Burrows*, 51 Cal. 404; *Jackson* v. *Torrence*, 83 Cal. 521 [23 Pac. 695]; *Olson* v. *Lovell*, 91 Cal. 506 [27 Pac. 765]); but, as the court said in *Cavanaugh* v. *Casselman*, 88 Cal. 543, 549 [26 Pac. 515, 517]: 'It is not the rule that a contract which on its face purports to be *inter partes* must invariably be executed by all whose names appear in the instrument before it will be binding on any. One reason why it is held in many of the cases that an agreement is not to be operative upon one until it has been signed by another, is that such signing is the consideration upon which the first signer agrees to be bound; but when a sufficient consideration for the agreement on the part of the first signer is shown to authorize its enforcement he cannot be released therefrom unless he shall show clearly that there were other considerations for his signing the agreement than those named in the instrument.' " (Pp. 306-307.)

Thus, the *Cavanaugh* line of cases holds that a signer cannot escape liability unless he affirmatively establishes that the signatures of all parties were contemplated as being a condition precedent to the validity of the contract (cf. *Mullarky* v. *Young* (1909) 9 Cal.App. 686 [100 P. 709]).

The cases relied upon by appellant which hold contracts were not formed because all signatures were not present, can be distinguished on their individual facts and can be made consistent with the reasoning of *Cavanaugh.*

For example, in *Anthony Macaroni Co.* v. *Nunziato* (1935) 5 Cal.App.2d 588 [43 P.2d 315], the trial court affirmatively found that the lessee *did not intend* to be bound unless both lessors signed. Only one lessor signed and, as a consequence, the court held the lessee was not

bound. Also, in *Helperin* v. *Guzzardi* (1951) 108 Cal.App.2d 125 [238 P.2d 141], the trial court made an affirmative finding that the wife *refused* to sign, and therefore there was no contract.

We therefore decline to follow the *Tewksbury* line of cases insofar as they hold that an agreement is invariably incomplete until signed by all parties purportedly bound. Instead, we adopt the *Cavanaugh* line of cases, i.e., that a contract is invalid if not signed by all parties purportedly bound *only when it is shown*, either by parol or express condition, that the contract was not intended to be complete until all parties had signed. Conversely, in the absence of a showing that the contract is not intended to be complete until signed by all parties, the parties who did sign will be bound.

In the case at hand there is no evidence which shows the parties intended to be bound only if all parties signed the contract. In fact, appellant conceded in his opening brief that "In the case at bar there is no conflicting testimony on this question and *there is no evidence at all which would fairly support an affirmative finding that Rowlands intended to be bound in a contract with Mr. Angell only, and the question whether Mr. Angell intended to be bound in a contract with Mr. Rowlands only was never touched upon.*" (Italics added.)

The validity of the sales documents is determined by the intent of the parties here. Since Rowlands did not show he only intended to be bound by the contract if all parties signed the instrument, we concur with the trial court that the instruments in question were valid and binding.

■ 2) Appellant concedes that respondent is entitled to consequential damages if a breach is established, but objects to the annual rate of the penalty (27 percent) as usurious, and therefore invalid.

■ Appellant correctly cites *Abrams* v. *Motter* (1970) 3 Cal.App.3d 828 [83 Cal.Rptr. 855] for the proposition that where the vendor's purchase of another residence was foreseeable, expenses connected with the new residence caused by the breach of a defaulting vendee are allowable as consequential damages if reasonable. (See also *Allen* v. *Enomoto* (1964) 228 Cal.App.2d 798 [39 Cal.Rptr. 815].)

■ This was a chain real estate transaction, and it was certainly foreseeable that respondent would incur additional expenses in connection with the purchase of a new residence if appellant defaulted.

At any rate, the penalty in question[3] was tantamount to liquidated damages. One of the factors for testing the validity of a liquidated damage clause is the anticipated or actual harm caused by the breach (2 Witkin, Summary of Cal. Law (8th ed. 1973) Sales, § 193, p. 1230). Clauses in residential real estate contracts whereby the parties agree to a particular amount per day for failure to close the transaction on a certain date protect the seller from having to support two residences. Such amounts are certainly reasonable in light of anticipated harm regardless of the fact that they exceed the legal interest rate.

The judgment is affirmed. The purported appeal by Carolyn Jean Rowlands is dismissed.

Taylor, P. J., and Rouse, J., concurred.

---

[3]$22 per day if the transaction was not closed by November 1, 1974.