426 So.2d 1127 (1983)
Sandra SKINNER and Alex Easton, Appellants,
v.
William K. HAUGSETH, Appellee.
No. 82-1318.
District Court of Appeal of Florida, Second District.
February 4, 1983.
*1128 Lawrence E. Lyman, St. Petersburg, for appellant Sandra Skinner.
Jack S. Carey of Carey & Harrison, St. Petersburg, for appellant Alex Easton.
Seymour A. Gordon of Gay & Gordon, P.A., St. Petersburg, for appellee.
GRIMES, Acting Chief Judge.
This appeal is taken from an order dismissing with prejudice an amended complaint for specific performance.
The complaint was filed by William and Sandra Skinner, his wife, and Alex Easton against William Haugseth. After the court granted Haugseth's motion to dismiss, an amended complaint was filed only in the names of Sandra Skinner and Alex Easton, thereby dropping William Skinner from the suit. They alleged that on November 23, 1981, they offered to purchase from Haugseth a certain parcel of real estate and that, as indicated on the contract attached to the complaint, Haugseth accepted the offer on November 27, 1981. They further alleged that on or before January 15, 1982, they were ready, willing and able to perform pursuant to the terms of the contract but that Haugseth declined to consummate the sale.
The sales contract was written on a printed form and dated November 23, 1981. It first recited that "William and Sandra Skinner, Alex Easton, et al.  hereinafter called the purchaser" had deposited $100 "as earnest money and in part payment on account of the purchase price" of the real estate thereafter described. The total purchase price of $15,000 was payable as follows: $100 down, $1400 additional earnest money within seven days, $7500 cash at closing and the assumption of a $6000 mortgage. The broker acknowledged receipt of the deposit subject to certain conditions customary in real estate sales contracts. The closing date was specified as January 15, 1982.
Beneath the signature of the real estate broker there appeared the following words, "I/we hereby agree to purchase the above described property at the price and upon the terms and conditions above set forth. I/we understand that this is a legally binding contract." The attested signatures of Alex K. Easton and Sandra Skinner, as *1129 purchasers, followed this language. The next section of the contract stated that "I/we hereby accept the offer and agree to deliver the above described property at the price and upon the terms and conditions above stated." William Haugseth's attested signature then followed with the notation that he had signed as seller on November 27, 1981.
The record establishes that the amended complaint was dismissed because William Skinner failed to sign the contract. On appeal, Sandra Skinner and Alex Easton argue that the contract was enforceable because their signatures gave it mutuality and Haugseth's signature satisfied the statute of frauds. Haugseth argues that the contract was not binding until all of the parties signed it. Anticipating the possible argument that William Skinner had ratified the contract by joining in the lawsuit, Haugseth also points out that he repudiated the contract long before this occurred.
The only Florida case reasonably relevant to the subject is Hughes v. Russell, 391 So.2d 256 (Fla. 4th DCA 1980). Mr. Russell, a New York resident on a business trip to West Palm Beach, inspected a home owned by Mr. and Mrs. Hughes. Mr. Russell decided that he and his wife would purchase it for the agreed price of $185,000. He instructed his wife who was in New York and who had never seen the home to execute and return the deposit receipt contract prepared by the Hughes'. While the contract referred to Mr. and Mrs. Russell as the purchaser, only Mrs. Russell signed it. Mrs. Russell placed the 10% deposit in trust with the broker and returned the contract to Florida where the sellers then executed it. Later, the Russells decided not to close the transaction.
Mrs. Russell filed suit to terminate the contract and obtain the return of the $18,500 deposit. The complaint alleged that the contract was subject to termite and plumbing inspections and that the reports of these inspections were unsatisfactory. The defendants admitted the existence of the contract but asserted that the plaintiffs had breached it. They sought to retain the deposit as liquidated damages under the contract. At the conclusion of the trial, the court announced that the contract was void because it had not been signed by Mr. Russell. Since the contract was unenforceable, the court ordered the return of the deposit.
On appeal, our sister court reasoned that when Mrs. Russell made the deposit and signed the contract and the Hughes' accepted and signed it, a binding contract resulted. However, the court remanded for a new trial to consider whether the Russells could properly terminate the contract and obtain the return of the deposit based upon the termite and plumbing inspections. The Hughes case differs from the case at hand only by virtue of the fact that in Hughes, the purchasers sought to take advantage of the fact that only one of them had signed the contract; whereas, here the seller seeks to sustain his position because less than all of the purchasers signed the contract.
The most comprehensive discussion of the subject appears in 17 C.J.S. Contracts § 62 (1963):
It has been held in numerous cases that, where an instrument has been executed by only a portion of the parties between whom it purports to be made, it is not binding on those who have executed it. The cases so holding are usually those in which the parties executing the instrument would have a remedy by way of indemnity or contribution against the other parties named, which remedy is lost by the failure of such other parties to execute the instrument.
The question as to whether those who have signed are bound is generally to be determined by the intention and understanding of the parties at the time of the execution of the instrument. The reason for holding the instrument void is that it was intended that all the parties should execute it and that each executes it on the implied condition that it is to be executed by the others, and, therefore, that until executed by all it is inchoate and incomplete and never takes effect as a valid contract, and this is especially true where the agreement expressly provides, *1130 or its manifest intent is, that it is not to be binding until signed.
Where these reasons do not apply, it is usually held that a party who signs and delivers an instrument is bound by the obligations therein assumed, although it is not executed by all the parties named in it, as, for example, where all the parties recognize the validity of the contract and acquiesce in its performance. Usually, however, a party may, on signing, impose an enforceable condition that the agreement is not to be binding until signed by others.
17 C.J.S. at 734-36 (footnotes omitted).
Superficially, many of the cases cited as authority for the foregoing text reach divergent results. Upon consideration, however, we find that a common thread of reasoning prevails. In the final analysis, the question almost always seems to turn upon whether the signing party manifested the intent not to be bound by the contract unless all of the other parties joined in its execution.
The importance of the intent at the time of execution was emphasized in Bank of United States v. Chemical Bank & Trust Co., 140 Misc. 394, 246 N.Y.S. 595 (Sup.Ct. 1930), when the court said:
The general rule is that one signing and delivering an instrument is bound by its obligations although it was not executed by all parties for whose signature it was prepared, where there is nothing to indicate an intention by him who signed it that he was not to be bound until it was signed by the others, which intention is brought home to the obligee. When the intent is manifested that the contract is to be executed by others than those who actually signed it, it is inchoate and incomplete and does not take effect as a binding contract unless executed by all the parties.
140 Misc. at 396, 246 N.Y.S. at 598.
The evolution toward a principle of law predicated upon intent is well illustrated in Angell v. Rowlands, 85 Cal. App.3d 536, 149 Cal. Rptr. 574 (1978). Originally, California followed the rule, first announced in Tewksbury v. O'Connell, 21 Cal. 60 (1862), that a contract is invalid until it is signed by all of the parties who are purportedly bound by it. Subsequently, there developed a somewhat contrary line of authority first represented by Cavanaugh v. Casselman, 88 Cal. 543, 26 P. 515 (1891). In Angell a husband seller and a husband buyer both signed a real estate contract. The wives did not sign despite spaces for their signatures. In a suit for damages brought by the seller for failure to purchase the property, the buyer defended on the ground that neither wife had signed the contract. The court affirmed a judgment upholding the contract and awarding damages to the seller. After analyzing the conflicting lines of authority, the court said:
We therefore decline to follow the Tewksbury line of cases insofar as they hold that an agreement is invariably incomplete until signed by all parties purportedly bound. Instead, we adopt the Cavanaugh line of cases, i.e., that a contract is invalid if not signed by all parties purportedly bound only when it is shown, either by parol or express condition, that the contract was not intended to be complete until all parties had signed. Conversely, in the absence of a showing that the contract is not intended to be complete until signed by all parties, the parties who did sign will be bound.
85 Cal. App.3d at 542, 149 Cal. Rptr. at 578.
In Curtis v. Hannah, 414 N.E.2d 962 (Ind. App. 1981), the plaintiffs sued for specific performance of a contract for sale signed by only two of three tenants in common even though the contract contemplated that the third tenant would also sign. The trial court entered summary judgment for the defendants. On appeal, the court reversed for a trial on the merits, holding that there was an issue of fact over the intent of the parties with respect to whether the signing tenants would be bound individually. The court observed that it could not as a matter of law say that the document displayed an intent that all of the parties needed to sign before any were bound, or that the owners *1131 signed only in partial consideration for the third tenant signing.
The Utah Supreme Court in Cox v. Berry, 19 Utah 2d 352, 431 P.2d 575 (1967), made the following pertinent observation:
Even where it appears that it was intended that others sign an agreement, it is not necessarily invariably true that all must sign before any are bound. This depends upon the agreement and whether it appears that part of the consideration for signing was that others would also sign and be bound jointly with them. It is usually to be assumed that the parties signing an agreement are bound thereby unless it appears that they did not so intend unless others also signed.
19 Utah 2d at 357, 431 P.2d at 579 (footnotes omitted).
In Schlosberg v. Shannon & Luchs Co., 53 A.2d 722 (D.C.Mun.App. 1947), Jack Schlosberg and Jack Coopersmith signed a contract for the purchase and sale of real estate. Schlosberg gave the real estate broker a $2,000 check as a deposit on the purchase price. Thereafter, Schlosberg announced that he would not complete the purchase and stopped payment on his check. The real estate broker sued Schlosberg for the amount of the deposit. As a defense, Schlosberg asserted that he signed the agreement on the condition, made known to the seller, that it would not be binding unless his wife also signed. He pointed out that the contract recited a receipt of the deposit from "Jack & Dorothy Schlosberg" and that there were two spaces for the signatures of the purchasers. In affirming a judgment for the brokers on disputed facts, the court stated:
Of course, one may sign an agreement on condition that he shall not be bound thereby until another also signs, and until the other does sign the first is not bound. But unless it clearly appears from the face of the instrument that it is the understanding of the parties that the agreement is not to be effective without the signatures of all, resort must be had to parol testimony to determine the intent of the parties. Mere expectation that another will sign does not necessarily prevent those signing from being bound even though the expected party does not sign.
53 A.2d at 723 (footnotes omitted).
The court in Palman v. Reynolds, 310 Mich. 35, 16 N.W.2d 657 (1944), noted that a party signatory to a contract has the burden of showing that he did not intend to be bound unless the contract was fully executed by all of the other parties. The court quoted with approval from an early case which held that if a party does not intend to be bound he has to declare his intentions at that time rather than simply testifying to this effect at a later date.
Accordingly, we hold that a contract not signed by all of the parties, but otherwise valid, may be upheld against a signing party, unless the nature or the wording of the contract indicates that his signature was conditioned upon all other parties signing the contract, or he can prove by parol evidence that when he signed the contract he made it known to the other parties who now seek to sustain the contract that he only intended to be bound if all parties signed it.
Measured by the foregoing standard, it is evident that the order of dismissal must be reversed. Patently, there was no issue concerning indemnity because Haugseth had no co-parties against whom he could make such a claim. At the time Haugseth signed the contract, Sandra Skinner and Alex Easton had already signed it. Therefore, he knew that William Skinner had not signed the contract. Yet, there is nothing in the contract specifying Haugseth's intent not to go through with the sale if William Skinner did not sign. The provision for the assumption of the mortgage suggests that Haugseth could have been concerned about who bought his property, but it was not enough to make the contract unenforceable as a matter of law if signed *1132 by less than all of the parties. The complaint clearly states a cause of action.
REVERSED.
CAMPBELL and SCHOONOVER, JJ., concur.