Reversed and Remanded and Memorandum Opinion filed October 23, 2008








Reversed and
Remanded and Memorandum
Opinion filed October 23, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00563-CV

____________

 

RSM PRODUCTION CORPORATION, A TEXAS CORPORATION, Appellant

 

V.

 

VINTAGE PETROLEUM, INC., A DELAWARE
CORPORATION, AND DEVON ENERGY CORPORATION, A DELAWARE CORPORATION, SUCCESSOR TO
SANTA FE ENERGY RESOURCES, INC., Appellees

 



 

On Appeal from the 334th
District Court

Harris County, Texas

Trial Court Cause No. 2005-71156

 



 

M E M O R A N D U M  O P I N I O N








In this breach-of-contract case, appellant RSM Production
Corporation, a Texas -corporation (ARSM@), appeals a
take-nothing summary judgment in favor of appellees, Vintage Petroleum, Inc., a
Delaware corporation (AVintage@), and Devon
Energy Corporation, a Delaware corporation, successor to Santa Fe Energy
Resources, Inc. (ADevon@ and ASanta Fe,@ respectively). 
Concluding a genuine issue of material fact exists regarding whether Vintage
and Devon=s predecessor, Santa Fe, intended to be bound by an
agreement with RSM absent the signature of a third entity, Premier Consolidated
Oilfields, PLC (APremier@), we reverse and
remand.[1]

I.  Factual And Procedural Background

RSM had an agreement with the government of Grenada giving
RSM the exclusive right to obtain an exploration license to conduct drilling
operations on approximately 4.75 million acres offshore of Grenada.  In March
1998, RSM negotiated an Initial Grenada Inter‑Company Agreement (AAgreement@) with Vintage,
Santa Fe, and Premier.[2] 
The Agreement contained the following opening recital: ATHIS AGREEMENT is
made this ___ day of March, 1998, by, between and among Vintage Petroleum, Inc.
. . . , Premier Oil Plc . . . , Santa Fe Energy Resources, Inc. . . . , and RSM
Production Corporation . . . .@  Under the Agreement, RSM was required to
assign to each of the three other parties an interest in the exploration
license RSM would obtain from Grenada.

The Agreement contained several provisions specifying the
parties= respective rights
and obligations and the stages through which the operation was to proceed.
First, the Agreement acknowledged Vintage=s, Santa Fe=s, and Premier=s wish to acquire
undivided interests in the exploration license RSM was to obtain from the
government of Grenada:








While recognizing the existence of this force
majeure condition [in existence while there is any adverse claim regarding
Grenada=s ownership of the petroleum rights
in any portion of the area covered by the License and uncertainty regarding
maritime boundaries among Grenada, Venezuela, and Trinidad and Tobago] and the
uncertainty surrounding its resolution, Vintage, Premier and Santa Fe wish to
acquire undivided interests in the License at this time, and RSM wishes to
assign such interests, retaining a 30% carried working interest until payout in
each development license and a 4% overriding royalty interest on all production
from the area covered by the License, and an additional 42% working interest in
the License. RSM anticipates that it will later assign the retained 42% working
interest to a larger, more experienced oil company (the ABell Cow@).  By this instrument, the parties
set forth their binding contractual agreement concerning such assignments,
retained RSM interests, and other matters.

 

Second, under the Agreement, after the 42% working interest
had been assigned to the ABell Cow,@ the parties were
to Apromptly negotiate
and unanimously agree upon an operating agreement to be effective upon issuance
of the exploration license . . . .@

Third, A[s]ubject to the receipt of all necessary
approvals by the Government of Grenada and the parties= execution of the
operating agreement,@ RSM was required promptly to Aassign an
undivided 9-a% interest to each of Vintage, Premier and Santa Fe,
reserving and retaining the remaining 72% interest.@

Fourth, the Agreement established who would bear the
expense of activities, including exploration work, done before the exploration
license was issued by the government of Grenada:

Activities Before License Issuance. The parties anticipate that the
primary activities prior to exploration license issuance will be negotiations
by the Government of Grenada (with assistance from RSM) in respect of its
maritime boundaries, although there may be some reprocessing of existing
seismic data or other technical studies during this time period and even, if
allowed by the Government of Grenada, some new exploration work. All expenses
during this period shall be borne solely by Bell Cow, Vintage, Premier and
Santa Fe . . . .  The parties agree that as of the date of this agreement, the
only costs and expenses that have been incurred so far in connection with the
contemplated transactions amount to a total of $ ___, all of which have been
initially paid by RSM subject to reimbursement as described above.

 








Fifth, the Agreement provided, AUpon the execution
of this agreement a Management Committee shall be formed to provide
supervision, direction and approval of the activities conducted prior to the
issuance of the exploration license.@  The Agreement
further provided AEach of the parties shall appoint one
representative to the Management Committee and one alternate representative.@

The Agreement also included a withdrawal provision. That
provision stated in part, APrior to the execution of the Operating
Agreement, any party may withdraw or otherwise terminate its participation in
this agreement by paying to the Operator for the benefit of all remaining
parties the amount of $50,000.@[3]

Finally, the Agreement concluded: AIN WITNESS
WHEREOF, the parties have executed this instrument, with the intention of being
contractually bound thereby, as of the date set forth above.@  The Agreement
then included four signature blanksCone for ARSM Production
Corporation, A Texas corporation@; one for AVintage Petroleum,
Inc., A Delaware corporation@; one for APremier
Consolidated Oilfields PLC, An English corporation@; and one for ASanta Fe Energy
Resources Inc., A Texas [sic] corporation.@

On March 26, 1998, RSM=s president, Jack
Grynberg, signed the Agreement and sent it to Vintage, Santa Fe, and Premier
under a cover letter, in which he requested that each company=s representative
execute and return a copy.  Although Vintage and Santa Fe signed the Agreement
after receiving it, Premier experienced financial difficulties and never signed
the Agreement.  Nothing in the Agreement conditions any party=s participation on
the participation of Premier or any other party.








In the fall of 2002, Grynberg sent a letter to Vintage and
Santa Fe (by then, Devon) concerning the Agreement and attaching information.[4] 
In response, on December 5, 2002, Vintage sent a letter to Grynberg advising
him Athat Vintage has
elected not to pursue the project . . . .@ and returned the
information that RSM had provided for Vintage=s consideration. 
The same month, Santa Fe/Devon also informed RSM of its intention not to pursue
the project and returned the same information to RSM.

The parties did not obtain a ABell Cow,@ execute an
operating agreement, or form a  management committee.  RSM never assigned an
interest in an exploration license to Vintage, Santa Fe/Devon, or a ABell Cow@, and had not
charged the other parties with the expenses of activities occurring before
issuance of an exploration license.    By 2005, RSM had done seismic
exploration, but no drilling, in connection with the project.  As of 2006,
Grynberg did not have a license for the project.

In November 2005, RSM filed suit against Vintage and Santa
Fe /Devon alleging that Vintage and Santa Fe/Devon breached the Agreement by
failing to pay a $50,000 withdrawal fee as required under the Agreement. 
Vintage and Santa Fe/Devon filed a joint motion for summary judgment on the
sole ground that no valid contract existed between RSM, Vintage, and Santa
Fe/Devon because one of the intended parties, Premier, did not sign the
proposed agreement, and the language of the agreement and the parties= collective
inaction conclusively demonstrated the parties did not intend to be bound by an
agreement not signed by all parties.  On June 6, 2007, the trial court granted
Vintage and Santa Fe/Devon=s motion for summary judgment and
dismissed RSM=s claims with prejudice.

II. Issues Presented








RSM raises two issues on appeal: (1) whether the Agreement
was Aintended to become
effective only upon the execution by all the parties for which signature blanks
were provided@; and (2) whether it was Vintage=s and Santa
Fe/Devon=s Aintention not to
be bound by the Agreement that they signed unless all parties named in it also
signed.@[5]  These two issues
essentially present a single challenge to the sole ground raised in Vintage and
Santa Fe/Devon=s traditional motion for summary judgment C that no valid
contract existed between RSM, Vintage, and Santa Fe/Devon because (1) Premier
did not sign the proposed agreement, and (2) the language of the agreement and
the parties= collective inaction conclusively demonstrated the
parties did not intend to be bound by an agreement not signed by all parties.[6]

III. Summary Judgment Burden And Standard Of
Review

To prevail on a motion for traditional summary judgment,
the movant must show there is no genuine issue of material fact and the movant
is entitled to judgment as a matter of law. See Tex. R. Civ. P. 166a(c);
Sw. Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002).  A
defendant is entitled to summary judgment if it conclusively negates an
essential element of the plaintiff=s case or
conclusively establishes all necessary elements of an affirmative defense. 
Cathey v. Booth, 900 S.W.2d 339, 341 (Tex. 1995).  A party conclusively
establishes a matter if reasonable people could not differ about the conclusion
to be drawn from the evidence.  See City of Keller v. Wilson, 168 S.W.3d
802, 816 (Tex. 2005).

We review a trial court=s grant of a
traditional summary judgment de novo.  See Provident Life & Accident
Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003).  In reviewing a summary
judgment, we take as true all evidence favorable to the nonmovant, and we
resolve all doubts and indulge every reasonable inference in the nonmovant=s favor. Grant,
73 S.W.3d at 215.

 

 








IV. Did
The Summary Judgment Proof Conclusively Establish Vintage And Santa Fe/Devon
Did Not Intend The Agreement To Bind Them Unless Premier Also Signed?

 

The question, then, is whether Vintage and Santa Fe/Devon=s summary judgment
proof established their intent not to be bound by the Agreement unless Premier
also signed.  AWhile intent is usually a fact question, an issue
which is normally a question of fact can be proved so conclusively by evidence
that it becomes a matter of law.@  IMCO Oil
& Gas v. Mitchell Energy Corp., 911 S.W.2d 916, 920 (Tex. App.CFort Worth 1995,
no writ) (citing Dixon v. Sw. Bell Tel. Co., 607 S.W.2d 240, 242 (Tex.
1980)).  To be entitled to summary judgment, it was incumbent on Vintage and
Santa Fe/Devon to establish their intent as a matter of law.  See id. 
The summary judgment proof they offered must establish the existence of the
fact such that reasonable minds cannot differ on the conclusion to be drawn
from the proof.  See id. (citing Triton Oil & Gas Corp. v. Marine
Contractors & Supply, Inc., 644 S.W.2d 443, 446 (Tex. 1982)).








In their summary judgment motion, Vintage and Santa
Fe/Devon relied on the following summary judgment proof to establish they did
not intend to be bound by the Agreement absent Premier=s signature:  (1)
provisions in the Agreement, including (a) the opening recital, which named
Premier as one of the parties, (b) portions of the paragraph stating the desire
of Vintage, Premier, and Santa Fe/Devon to acquire undivided interests in the
Grenada exploration license, (c) portions of the paragraph conditionally
requiring RSM to assign an undivided 9a % interest to
Vintage, Premier, and Santa Fe/Devon, (d) portions of the paragraph requiring Athe parties@ to establish an
operating agreement, (e) portions of the paragraph requiring Bell Cow, Vintage,
Premier and Santa Fe/Devon to bear expenses incurred before issuance of the
license, (f) portions of the paragraph providing for formation of the
management committee and for A[e]ach of the parties@ to appoint
representatives, (g) portions of the paragraph regarding RSM=s intention to
find a ABell Cow@, (h) the merger
clause, and (i) the concluding paragraph stating the intention of the Aparties@ to be bound and 
containing a signature line for each party, including Premier; (2) Grynberg=s cover letter to
the representatives of Vintage, Premier, and Santa Fe/Devon, requesting they
sign the Agreement and return one copy to him; (3) copies of the Agreement
lacking Premier=s signature; and (4) Grynberg=s deposition
testimony in which he indicated provisions of the Agreement had not been
accomplished, including (a) formation of a management committee, (b)
negotiation of an operating agreement, (c) enlistment of a ABell Cow@, (d) RSM=s charging its
expenses to the parties, and (e) drilling, seismic work, technical studies, or
other exploration before 2005.[7]

In response, RSM argued the following proof showed there
were disputed material fact issues on the question of intent: (1) proof the
Agreement was open to all interested parties; (2) proof Vintage and Santa
Fe/Devon had not qualified their participation by any requirement that
additional parties execute the Agreement, (3) proof Vintage and Santa Fe/Devon
had signed the Agreement knowing of the uncertainty of Grenada=s issuance of the
License, and (4) proof Vintage and Santa Fe/Devon allowed the co-venture to
proceed for over four-and-a-half years before withdrawing.








The record supports RSM=s argument.[8] 
In Grynberg=s March 26, 1998 letter requesting the representatives
of Vintage, Premier, and Santa Fe/Devon to sign, Grynberg referred to telling AConoco to >lump it,=@ suggesting there
had been prior negotiations with that company, and the other parties knew about
those negotiations.  The Agreement itself contains the parties= acknowledgment of
the uncertainty surrounding resolution of the License issue with Grenada, but
contains no language conditioning Vintage=s or Santa
Fe/Devon=s participation on
Premier=s participation. 
According to Grynberg=s deposition testimony, although it was
the initial intention that all three parties sign, it was not a requirement. 
Finally, Vintage and Santa Fe/Devon apparently waited until December, 2002Cover four years
after Grynberg=s March 26, 1998 letter requesting Premier=s signatureCto inform Grynberg
they were not proceeding with the project.

In IMCO, the Fort Worth Court of Appeals affirmed a
summary judgment against IMCO, a plaintiff who was challenging the validity of
a contract to which it was not a party.  IMCO, 911 S.W.2d at 917B18, 921.[9] 
The Fort Worth court rejected IMCO=s argument Athat the mere
existence of multiple‑party signature lines and the reference to all of
the >parties= indicate[d] a
requirement that the document will not become effective until signed by all the
parties for whom signature lines are provided.@  Id. at
920.  Finding no Texas authority involving multiple-party signature blanks, the
Fort Worth court observed,

We believe the appropriate rule to apply was thoroughly discussed in Skinner
v. Haugseth, 426 So. 2d 1127 (Fla. Dist. Ct. App. 1983), where the court
analyzed the views in several jurisdictions and held that a contract not signed
by all of the parties will be valid unless the nature or the wording of the
contract indicates a condition precedent is intended.  Id. at 1131.

 

Id.[10]








The Skinner court, nevertheless, acknowledged
authority to the contrary, i.e., indicating that an instrument, executed by
only some of the parties among whom it purports to be made, is not binding on
those who have executed it.  Skinner v. Haugseth, 426 So. 2d 1127, 1129
(Fla. Dist. Ct. App. 1983).  One circumstance supporting such cases exists when
A>the parties
executing the instrument would have a remedy by way of indemnity or
contribution against the other parties named, which remedy is lost by the
failure of such other parties to execute the instrument.=@ Id.
(quoting 17 C.J.S. Contracts ' 62 (1963)); see
17 C.J.S. ' 75 (1999).   Vintage and Santa Fe/Devon do not argue
the contract in the present case provides for indemnification by, or a right of
contribution from, Premier.













To support the argument they are not bound by the
Agreement, Vintage and Santa Fe/Devon rely on Simmons & Simmons
Construction Co. v. Rea, 286 S.W.2d 415 (Tex. 1955) and Scaife v.
Associated Air Center, Inc., 100 F.3d 406 (5th Cir. 1996).  In both cases,
the appellate courts concluded there was no binding written contract.  See
Simmons, 286 S.W.2d at 418B19; Scaife, 100 F.3d at 411.  Those
cases, however, are distinguishable from the present case because in each the
plaintiff was suing a non-signing party.  See Simmons, 286 S.W.2d at 416
(jury trial involving signatory plaintiff suing non-signatory defendant); Scaife,
100 F.3d at 407B08 (summary judgment involving
non-signatory plaintiff suing non-signatory defendant).  Neither case presented
the issue of whether the signature of a third entity, not a party to the suit,
was a condition precedent to the parties= agreement to be
bound.      We conclude the summary judgment proof did not conclusively
establish Vintage=s and Santa Fe/Devon=s intention not to
be bound unless Premier also signed the contract.[11] 
Accordingly, we sustain RSM=s two issues.

Having sustained RSM=s two issues, we
reverse the summary judgment and remand for further proceedings.

 

 

/s/        Charles W. Seymore

Justice

 

Judgment rendered and Memorandum Opinion filed October
23, 2008.

Panel consists of Justices Yates, Seymore, and Boyce.

 

 

 

 

 

 









[1]  Because the dispositive issue is clearly settled in
law, we issue this memorandum opinion.  Tex. R. App. P. 47.4.





[2]  Premier is not a party to the lawsuit.





[3]  The Agreement specified that RSM was to be Adesignated the Operator during the first two years of
the exploration license, with a provision that a new operator shall be elected
at the end of the first two years by the parties holding at least a 55%
interest in the License.@





[4]  From this point on, in the opinion, we refer to
Devon as ASanta Fe/Devon@ to
reflect the relation between the original and successor entities.





[5]  RSM also refers to, but does not challenge, the
trial court=s handwritten notation on the judgment indicating it
sustained Vintage and Santa Fe/Devon=s
objections to Grynberg=s affidavit in support of RSM=s response to the motion for summary judgment.





[6]  Vintage and Santa Fe/Devon state that their summary
judgment motion was a traditional, rather than a no-evidence, motion.





[7]  Vintage and Santa Fe/Devon characterize Grynberg as
testifying no seismic work was done before 2005.  Grynberg, however, testified
the last seismic work was done in 2005.





[8]  Although RSM relied on Grynberg=s affidavit in support, we refer only to those
assertions for which there is other documentary support in the record.





[9]  IMCO was a
mineral rights case involving at least two operating agreements on the same
tract and multiple preferential rights to purchase.  See IMCO Oil & Gas
v. Mitchell Energy Corp., 911 S.W.2d 916, 917B18 (Tex. App.CFort Worth 1995, no writ).  In 1993, IMCO was attempting to purchase interests that had been the
subject of an agreement between IMCO=s prospective seller, Westland Oil, and another party,
Mitchell Energy, which had succeeded to rights governed by agreements among yet
other parties.  See id. at 918.  IMCO=s purchase of the rights it sought was thwarted when
MitchellCpursuant to a 1972 agreement signed
by some but not all parties for whom there were signature blanksCexercised its preferential right to
the property IMCO was trying to purchase.  See id.  IMCO was challenging
the validity of the 1972 agreement.  See id. at 920.





[10]  The Skinner court also allowed that a party
could Aprove by parol evidence that when he signed the
contract he made it known to the other parties who now seek to sustain the
contract that he only intended to be bound if all parties signed it.@   Skinner v. Haugseth, 426 So. 2d 1127, 1131
(Fla. Dist. Ct. App. 1983).  The summary judgment proof in the present case
contains no such evidence.





[11]    In Turboff v. Gertner, Aron & Ledet
Investments, this court considered the procedural mirror image of the
present case.  See 763 S.W.2d 827  (Tex. App.CHouston [14th Dist.] 1988, writ denied).  Gertner,
Aron, & Ledet (GAL) was suing the defendant, Turboff, to enforce a buy‑sell
agreement that contained a signature line for a non‑party, First Texas,
which was to consent to financing terms set forth in the agreement.  See id.
at 828.  First Texas, however, had not signed the agreement.  See id. 
GAL filed a motion for partial summary judgment, arguing that, as a matter of
law, First Texas=s consent was not required to bind Turboff.  See
id. at 829.  GAL prevailed in the trial court, and Turboff appealed.  See
id. at 828.  In a split decision, this court reversed.  Id. at 832. 
After listing eight pieces of summary judgment proof, the court reasoned:

 

The evidence outlined above indicates that the
transaction was not consummated as proposed or intended and supports the
reasonable inference that the consent of First Texas to the financing terms of
the agreement was contemplated by the parties.  We must indulge all reasonable
inferences in favor of the non‑movant.  This inference is sufficient to
raise a fact question concerning whether the parties contemplated the consent
of First Texas as a condition to enforceability of the agreement.  Furthermore,
in the face of this inference, the irrelevance of First Texas= [sic] signature cannot possibly be established as a
matter of law.  Therefore, the summary judgment evidence was insufficient to
support the trial court=s order and the judgment was improper.  For the
same reason summary judgment for Turboff would have been equally improper.

 

Id. at 830 (emphasis added) (citations omitted).  Thus,
dictum in Turboff supports this court=s
decision in the present case.

 

After remand and on appeal from a bench trial, the
Corpus Christi court of appeals affirmed a judgment in favor of GAL.  See
Turboff v. Gertner, Aron & Ledet Invs., 840 S.W.2d 603, 612 (Tex. App.CCorpus Christi 1992, writ dism=d).   The court extensively discussed language in the
agreement that stated conveyance of the property was Asubject to@
existing First Texas liensClanguage not
mentioned in this court=s opinion.  See id. at 606B08.  The court observed that Asubject to@
could reasonably be construed to mean something other than setting a condition
precedent.  Id. at 608.  The court also referred to an unchallenged
finding of fact:

 

In its findings of fact, the trial court determined
that the parties intended to be bound irrespective of First Texas= [sic] consent.  The Turboffs do not challenge the
sufficiency of the evidence to support that finding.  They merely raise the
issue that any evidence regarding intention of the parties is irrelevant
because the contract is facially unambiguous.  The unchallenged finding is
binding.

 

The Fourteenth Court of Appeals opinion is a sound
one.  The trial court attempted to follow it in the second trial by trying the
issue of intent.  No challenge is made to the findings.

 

Id. at 609 (citation omitted).  Thus, the opinions of
this court and the Corpus Christi court of appeals in Turboff support
the conclusion that the summary judgment proof in the present case does not
conclusively establish lack of intent to be bound absent Premier=s signature.