Filed 1/21/15  Evans v. OneWest Bank, N.A. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| GILDA EVANS,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>ONEWEST BANK N.A., et al.,<br><br>    Defendants and Respondents. | B250847<br><br>(Los Angeles County<br>Super. Ct. No. LC098810) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Russell Steven Kussman, Judge.  Affirmed.

Gilda Evans, in pro. per., for Plaintiff and Appellant.

Dykema Gossett, J. Kevin Snyder and James M. Golden for Defendant and Respondent, OneWest Bank, N.A.

Severson & Werson, Jan T. Chilton and Michael G. Cross for Defendant and Respondent, PHH Home Loans, LLC.

_____

After Gilda Evans defaulted on a home loan secured by a deed of trust on her property and following a notice of foreclosure, her house was sold in a trustee's sale. Representing herself, Evans sued her lender and loan service provider for constructive fraud, claiming they failed to disclose at the inception of the loan agreement their intent to securitize and sell her loan. She also alleged the loan agreement, on which she had made payments for several years before defaulting, should be rescinded or declared void because the promissory note was not signed by the lender and was not supported by any tangible consideration. After taking judicial notice of the loan agreement and deed of trust, the trial court sustained without leave to amend the demurrer by the lender and loan service provider to the first amended complaint, finding the pleading failed to state, and could not be amended to state, a legally cognizable claim. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Loans, Evans's Default and the Trustee's Sale*

On March 8, 2007 Evans obtained a home loan in the principal amount of $843,000 from PHH Home Loans, LLC, doing business as First Capital Mortgage. The loan was secured by Evan's home, real property located at 4801 Corbin Avenue in Tarzana. To effect the loan agreement, Evans signed a promissory note and a deed of trust (the first deed of trust), both of which were promptly recorded with the Los Angeles County Recorder's Office.[1] Neither the promissory note nor the deed of trust was signed by First Capital.

On March 14, 2007 First Capital assigned "all beneficial interest" in the first deed of trust to Mortgage Electronic Registration Systems, Inc. (MERS); the assignment was recorded with the County Recorder on April 9, 2007. First Capital transferred to Indymac Bank, FSB the right to service the loan beginning May 1, 2007 and notified Evans of the assignment. Thereafter, Evans began making payments on her loan to

---

[1] Evans reconveyed her interest in the property to her revocable living trust on March 22, 2007 and recorded that conveyance the same day.

2

Indymac. In May 2007 Evans also obtained from Indymac a home equity line of credit in the amount of $150,000, secured by a second deed of trust on the property.

According to Evans, for more than four years she made monthly payments on both loans to Indymac. Sometime in the middle of 2011 Evans defaulted on both loans. On April 16, 2012 MERS transferred its interest in its first deed of trust to U.S. Bank National Association (U.S. Bank), as trustee for the LXS2007-12N Trust. In May 2012 U.S. Bank initiated nonjudicial foreclosure proceedings pursuant to Civil Code section 2924 et seq. Notices of default and election to sell were issued and recorded, followed by a notice of trustee's sale. The property was sold on August 24, 2012 for $845,300 to Martingale Investments, LLC, the successful bidder at the trustee's sale.

2. *Evans's Superior Court Complaint*

On October 31, 2012 Evans, representing herself, sued First Capital and OneWest Bank, Indymac's successor in interest[2] (collectively, the Bank defendants), in Los Angeles Superior Court.[3] In her operative first amended complaint Evans asserted causes of action for constructive fraud and "fraud on fraud" and sought rescission of the loan and security agreements, an order declaring her loan and security agreements void at their inception for failure of consideration and lack of mutual assent and an order quieting title to the real property in her name.[4] In support of her claims Evans alleged the Bank

---

[2] Indymac failed in July 2009 and was taken over by the Federal Deposit Insurance Corporation (FDIC), which served as receiver of the newly formed Indymac Federal Bank, FSB. On March 19, 2009 OneWest Bank acquired from the FDIC the rights to service specified Indymac loans, including Evans's loan.

[3] Prior to filing this action, in July 2012 Evans filed a complaint in federal district court against the Bank defendants and several other individuals and entities alleging violations of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO") (18 U.S.C. § 1962 et seq.) as well as claims for constructive fraud and common law fraud. The Bank defendants' motions to dismiss for failure to state a claim were granted, and the action was dismissed with prejudice on December 4, 2012. Her appeal of that order is currently pending in the United States Court of Appeals for the Ninth Circuit.

[4] Martingale Investments, LLC, was also named as a defendant in the instant lawsuit. Martingale filed its own demurrer based on its status as a bona fide purchaser for value. On March 5, 2013, prior to the hearing on the demurrers, Evans filed a request

3

defendants had failed to disclose their intent to securitize her loan and then sell the mortgage-backed securities to third party investors.[5] In addition, she alleged the loan agreements failed for lack of consideration because the Bank defendants "d[id] not lend their actual assets" to her. Rather, she alleged, using tricks of accounting, First Capital deposited Evans's note, which "act[ed] like money" on the bank's financial statements and which was used "by the bank as an asset from which to issue a check," but, "in actuality, the check did not represent any actual transfer of Federal Reserve Bank Notes" to her. Moreover, according to her complaint, because the Bank defendants had failed to sign the note, there was no "meeting of the minds" between her and either of the Bank defendants. After discovering the Bank defendants' purportedly fraudulent business practices, on September 23, 2011, long after her default, Evans sent a notice of rescission cancelling the notes and security agreements and demanding restitution for all past payments she had made. Her demand for rescission and restitution was rejected. In addition to an order of rescission, restitution and quieting title to the property in her name, Evans's first amended complaint also sought, in the alternative, compensatory and punitive damages.

---

to dismiss Martingale with prejudice, which was granted the same date. Martingale is not a party to this appeal.

[5] The process of "securitizing a loan" was succinctly explained in *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079, 1082, footnote 1: "Mortgage-backed securities are created through a complex process known as 'securitization.' (See Levitin & Twomey, *Mortgage Servicing* (2011) 28 Yale J. on Reg. 1, 13 ['a mortgage securitization transaction is extremely complex . . .'].) In simplified terms, 'securitization' is the process where (1) many loans are bundled together and transferred to a passive entity such as a trust, and (2) the trust holds the loans and issues investment securities that are repaid from the mortgage payments made on the loans. [Citation.] Hence, the securities issued by the trust are 'mortgage-backed.'"

## 2. *The Bank Defendants' Demurrer to the First Amended Complaint*

On December 21, 2012 First Capital demurred to the first amended complaint, asserting Evans failed to allege facts sufficient to state a cause of action. On February 5, 2013 OneWest filed a joinder to First Capital's demurrer.[6] Both First Capital and OneWest requested judicial notice of several documents evidencing the March 8, 2007 secured loan.[7] Following a hearing, the trial court sustained the Bank defendants' demurrer without leave to amend "[f]or the reasons stated in the moving papers . . . ."

## DISCUSSION

### 1. *Standard of Review*

A demurrer tests the legal sufficiency of the factual allegations in a complaint. We independently review the superior court's ruling on a demurrer and determine de novo whether the pleading alleges facts sufficient to state a cause of action or discloses a complete defense. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415; *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.) We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded and matters of which judicial notice has been taken. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 20; *Schifando v. City of Los Angeles* (2003) 31 Cal.4th

---

[6] In its memorandum of points and authorities "in support of its joinder" in First Capital's demurrer, OneWest included an argument not made by First Capital: Pursuant to its purchase agreement with the FDIC, OneWest did not assume any of Indymac's liabilities prior to March 19, 2009. Thus, it could not be held liable for its predecessor's wrongful conduct, all of which was alleged to have occurred prior to March 19, 2009.

[7] In particular, the Bank defendants requested the court take judicial notice of (1) the recorded first deed of trust; (2) the March 8, 2007 adjustable rate promissory note; (3) First Capital's assignment of the deed of trust to MERS recorded in April 2007; (4) the notice of default and election to sell under a deed of trust, recorded on May 2, 2012; (5) notice of trustee's sale, recorded August 3, 2012; (6) the trustee's deed upon sale, recorded September 12, 2012; and (7) Evans's federal district court complaint. In addition, OneWest requested the court take judicial notice of its asset purchase agreement with the FDIC, as receiver of Indymac, and the FDIC's transfer of Indymac's interest in the deed of trust to OneWest.

5

1074, 1081.)  We liberally construe the pleading with a view to substantial justice between the parties.  (Code Civ. Proc., § 452; *Schifando*, at p. 1081.)

2. *The Trial Court Did Not Err in Sustaining the Bank Defendants' Demurrer*

On appeal Evans has abandoned her damage claims and focuses exclusively on her claims for rescission of the loan and security agreements that gave First Capital and its assignees the power to sell her house in the event of default.  At the threshold, the first amended complaint, together with the recorded documents subject to judicial notice, establish the real property was sold at a trustee's sale, thereby extinguishing the liens created by the first and second deeds of trust.  (See Civ. Code, § 2910 ["sale of any property on which there is a lien, in satisfaction of the claim secured thereby . . . extinguishes the lien thereon"]; *Cornelison v. Kornbluth* (1975) 15 Cal.3d 590, 606 [deed of trust extinguished after foreclosure sale]; *Streiff v. Darlington* (1937) 9 Cal.2d 42, 45 [same].)  Thus, although Evans insists she seeks rescission and need not allege a wrongful foreclosure claim, the only way she can obtain the relief she requests—to unwind the sale—is to set aside the sale of her property.  To this end, Evans's complaint must plead facts sufficient to allege the trustee under a deed of trust with a power of sale caused an illegal, fraudulent or willfully oppressive sale of real property resulting in a wrongful foreclosure.  (*Multani v. Witkin & Neal* (2013) 215 Cal.App.4th 1428, 1449; *Chavez v. Indymac Mortgage Services* (2013) 219 Cal.App.4th 1052, 1063.)[8]

---

[8]     We have some question whether the judgment against Evans in her federal district court action following the Bank defendants' motion to dismiss for failure to state a claim precludes or, at the very least, is dispositive of the fraud claims in the instant action under principles of res judicata/collateral estoppel notwithstanding the pending appeal of that judgment in the United States Court of Appeals for the Ninth Circuit.  (See *Younger v. Jensen* (1980) 26 Cal.3d 397, 411 [federal judgment "'has the same effect in the courts of this state as it would have in federal court'"; that is, federal district court judgment is final and has preclusive effect until reversed on appeal, modified or set aside]; *Calhoun v. Franchise Tax Bd.* (1978) 20 Cal.3d 881, 887 [same]; *Johnson v. GlaxoSmithKline, Inc.* (2008) 166 Cal.App.4th 1497, 1508, fn. 6 [same]; see also *Hagans v. Lavine* (1974) 415 U.S. 528, 542 [94 S.Ct. 1372, 39 L.Ed.2d 577] ["it is well settled that the failure to state a proper cause of action calls for a judgment on the merits"]; *Stewart v. United States Bancorp* (9th Cir. 2002) 297 F.3d 953, 957 ["a dismissal for failure to state a claim

a. *Evans failed to allege facts showing the loan agreement was obtained through constructive fraud*

Evans attempts to plead a wrongful foreclosure and illegal sale in part by alleging First Capital obtained the first deed of trust through constructive fraud. "'"Constructive fraud is a unique species of fraud applicable only to a fiduciary or confidential relationship." [Citation.] [¶] "[A]s a general principle constructive fraud comprises any act, omission or concealment involving a breach of legal or equitable duty, trust or confidence which results in damage to another even though the conduct is not otherwise fraudulent. Most acts by an agent in breach of his fiduciary duties constitute constructive fraud. The failure of the fiduciary to disclose a material fact to his principal which might affect the fiduciary's motives or the principal's decision, which is known (or should be known) to the fiduciary, may constitute constructive fraud . . . .'"'" (*Mark Tanner Construction, Inc. v. HUB Internat. Ins. Services, Inc.* (2014) 224 Cal.App.4th 574, 588; accord, *Salahutdin v. Valley of California, Inc*. (1994) 24 Cal.App.4th 555, 562.)

Evans alleges First Capital failed to disclose to her its intent to securitize her loan; had it done so, she insists, she would not have entered into the loan agreement. Even assuming Evans, who was arguably not aggrieved by the securitization, has standing to pursue this claim,[9] she cannot demonstrate the necessary elements of constructive fraud.

---

under [Fed. R. Civ. Proc.] 12(b)(6) is a 'judgment on the merits' to which res judicata applies"].) Nonetheless, because the Bank defendants' did not make this argument in their demurrer papers and the trial court did not have the opportunity to rule on that ground, we decline to consider it.

[9] The appellate courts are divided whether a borrower has standing to challenge a foreclosure when he or she is not the party aggrieved by the lender's improper assignment or securitization of a deed of trust. (Compare *Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 515 [borrower lacks standing to challenge lender's transfer of note because borrower is not aggrieved by the lender's subsequent ineffective assignment; "[t]he true victim [is] an individual or entity that believes it has a present beneficial interest in the promissory note and may suffer the unauthorized loss of its interest in the note"]; *Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75, 82 [same] with *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079, 1094-1096 [if assignment of note and deed of trust is void at inception, borrower has standing to assert wrongful foreclosure claim based on trustee's failure to adhere to

7

Contrary to her contention, neither First Capital nor Indymac had a fiduciary duty to Evans that could give rise to the obligation to disclose an intent to securitize her loan. (See *Perlas v. GMAC Mortgage, LLC* (2010) 187 Cal.App.4th 429, 436 ["'[a]bsent special circumstances[,] a loan transaction is at arm's length and there is no fiduciary relationship between the borrower and the lender'"]; *Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 67 [no fiduciary relationship between loan servicer and borrower]; *Nymark v. Heart Fed. Savings & Loan Assn.* (1991) 231 Cal.App.3d 1089, 1093, fn. 1 ["the relationship between a lending institution and its borrower-client is not fiduciary in nature"]; *Kruse v. Bank of America* (1988) 202 Cal.App.3d 38, 67 [commercial lender is entitled to pursue its own economic interests in a loan transaction].)

Other than her legally inadequate allegations of fiduciary duty, Evans has not alleged any other basis for requiring a lender to disclose an intent to monetize a loan secured by a deed of trust. (See generally Civ. Code, § 1573 [constructive fraud occurs when law imposes duty to disclose and party with duty to disclose fails, with or without fraudulent intent, to disclose].) Although she refers generally in her appellate brief to an unspecified obligation under the California Uniform Commercial Code, Evans fails to cite any particular statutory provision in support of that contention in her appellate briefs; and the several sections she cites in her complaint do not support her position. Moreover, the deed of trust Evans signed expressly provided that First Capital could sell the note "or a partial interest in the Note (together with this Security Instrument . . . one or more times without prior notice to the Borrower." Thus, Evans was on notice that the note and deed of trust could be sold in whole or in part. She has also not alleged how the subsequent securitization and sale of the note were not covered by this notice or, even if they were

statutory requirements for foreclosure sale].) The question whether, in an action for wrongful foreclosure on a deed of trust securing a home loan, a borrower has standing to challenge an assignment of the note and deed of trust on the basis of defects allegedly making the assignment void is currently pending before the Supreme Court. (See *Yvanova v. New Century Mortgage Corp.* (2014) 226 Cal.App.4th 495, review granted Aug. 27, 2014, S218973.)

8

not, how securitization adversely affected her in any way. The trial court did not err in concluding her complaint failed to state a claim for constructive fraud.[10]

        b. *Evans cannot show a failure of consideration or lack of mutual assent*

Evans contends the loan agreement secured by the first deed of trust was void, or at the very least voidable, due to a failure of consideration. (See Civ. Code, § 1698, subd. (b)(2)-(4) [a party to a contract may rescind and thereby extinguish the contract if there is a failure of consideration].) According to Evan's complaint, First Capital did not actually loan her any of its assets: "[T]he check that the bank issued is not money. The check merely transfers money and by transferring money the check merely [acts] like money. The money deposited in the bank[']s demand deposit account was Plaintiff's mortgage note. If the bank never fulfills the contract to loan money from its own assets, then the bank does not own the mortgage note and thus no consideration was given on the bank's behalf. The mortgage transactions that occurred were not loans of the bank's assets; they were merely an exchange of one species of currency for another. In this case, the bank sells the mortgage note for Federal Reserve Bank Notes or other assets while still owing the liability for the mortgage note sold and without the bank giving up any of its own Federal Reserve Bank Notes."

Evans's allegations reflect what has become known as the "vapor money theory," "the convoluted and nonsensical argument that a plaintiff does not owe the money advanced by the lender on [her] loan because the indebtedness was not funded by the lender with actual money" (*Tonea v. Bank of America, N.A.* (N.D. Ga. 2013) 6 F.Supp.3d 1331, 1344). It has been uniformly rejected in the federal and state courts. (See *ibid*. [citing cases]*; Miner v. JPMorgan Chase Bank* (N.D. Cal. 2013) 2013 U.S. Dist. LEXIS 36362, *7–*8 [the "vapor money" theory of relief has been rejected by courts nationwide

---

[10]    Evans explains in her appeal her challenge is directed to the court's ruling on constructive fraud; she expressly does not challenge the trial court's ruling she failed to state a cause of action for actual fraud nor does her complaint allege any misrepresentation was made to her.

as such claims have "no basis in law"].)  The trial court did not err in similarly rejecting it as a basis for voiding the contract for lack of consideration.

Evans insists she is not pleading a vapor money theory.  Rather, her allegation, however inartfully worded, is, by securitizing and then selling her loan, First Capital received payment from another source, transforming the nature of her debt and extinguishing her obligation to pay it.  At the very least, she argues, the trial court should have overruled the demurrer and given her the opportunity to conduct discovery of the Bank defendants' financial statements to prove First Capital "twice benefitted" from her loan.  Contrary to Evans's contention, the transfer of First Capital's interest in the loan did not affect, much less extinguish, Evans's own continuing obligation to perform in accordance with her agreement.  (*Jenkins v. JPMorgan Chase Bank, supra,* 216 Cal.App.4th at p. 515 ["[a]s to plaintiff, an assignment merely substituted one creditor for another, without changing her obligations under the note"].)  Thus, to the extent this is her intended theory of relief, this justification for her cause of action fares no better than her vapor money theory.

Similarly meritless is Evans's contention First Capital failed to sign the note and first deed of trust, thereby making the contract void, voidable or otherwise unenforceable for lack of mutual assent.  In her complaint Evans admits she agreed to the loan, signed both the note and trust deed and operated in accordance with those agreements.  As the signatory now resisting enforcement of the contract, she "'cannot escape liability unless [s]he affirmatively establishes that the signatures of all parties were contemplated as being a condition precedent to the validity of the contract.'"  (*Fagelbaum & Heller LLP v. Smylie* (2009) 174 Cal.App.4th 1351, 1364-1365; accord, *Angell v. Rowlands* (1978) 85 Cal.App.3d 536, 540.)  Evans has not alleged such an intended condition precedent, nor has she alleged she did not know she was signing a secured loan agreement.  (See *Saint Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1200 [no mutual assent if party did not know what it was signing was actually a contract].)  In fact,

10

as to the latter point, her complaint is expressly to the contrary.  The court did not err in concluding Evan's complaint failed to allege a lack of mutual assent.[11]

### c. *Evans's other arguments also fail*

Evans contends the trial court improperly cross-examined her at the hearing on the demurrer, undermining her arguments and demonstrating its bias in favor of the Bank defendants.  The colloquy Evans characterizes as improper cross-examination, however, was an entirely appropriate effort by the trial court to understand her self-drafted complaint and, in particular, the bases for her claims.[12]  There was no impropriety.

---

[11]  Although Evans has limited her appeal to arguments challenging her claims for rescission, we note her damage claims, similarly premised on constructive fraud, lack of mutual assent and failure of consideration, also fail for the reasons we explained.

[12]  Evans cites the following colloquy between her and the trial court:

"[Court]:  . . . So, you bought a house, and it had a mortgage on it.  You put some money down, I presume?

"[Evans]:  I put, I put, yes, I did put money down.

"[Court]:  Then you got the mortgage from the lender?

"[Evans]:  Well, I don't know that Your Honor.

"[Court]:  Well, you got the house?

"[Evans]:  I don't know what it was, and I can't speak to that because that's not at issue in this particular hearing what happened.

"[Court]:  Well, I am asking you.  So you got the house? . . ."

"[Court]:  What did you think, that you put the money down and you got the whole house and didn't owe anybody anything?  Or you paid a mortgage payment?

"[Evans]:  I was living in the house, Your Honor and I was making payments . . . to whoever claimed that they were servicing . . . the alleged mortgage transaction.

"[Court]:  Then did you refinance it?  At some point . . . ?

"[Evans]:  Well, that was my understanding at the time.  I later found out that is, in fact, not what happened. . . .  I was, in fact, presented with something that presumably at the time was presented as an alleged mortgage transaction and a contract.  In fact, it was neither.  It was a U.C.C instrument intended for securitization.

"[Court]:  What I am trying to figure out is that you got this house . . . and apparently had to borrow some portion of the money to purchase it.  And I am trying to

Finally, citing language in Civil Code section 2920 distinguishing a mortgage from a deed of trust,[13] Evans suggests a power of sale can only be conveyed through a mortgage, not a deed of trust and, therefore, neither First Capital nor its assignee, U.S. Bank, had the power to foreclose. Evans misapprehends the statute and the governing authorities. In distinguishing mortgages from deeds of trust for purpose of the nonjudicial foreclosure statutes, the Legislature provided for different rules for the two forms of security when appropriate. (See Civ. Code, §§ 2924-2924h.) Nothing in section 2920 or in the nonjudicial foreclosure statutes (see *ibid.*) prohibits a power of sale from being conveyed by a deed of trust. In fact, a deed of trust with the power of sale is expressly contemplated by the nonjudicial foreclosure statutes (see Civ. Code, § 2924) and has become the more common security instrument in California. (See *Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1235 ["[i]n a nonjudicial foreclosure, also known as a 'trustee's sale,' the trustee exercises the power of sale given by the deed of trust"]; *Rossberg v. Bank of America* (2013) 219 Cal.App.4th 1481, 1492 ["statutory scheme authorizing nonjudicial foreclosures "'"cover[s] every aspect of [the] exercise of [a] power of sale contained in a deed of trust"'""]; see also *Aviel v. Ng* (2008) 161 Cal.App.4th 809, 815 [explaining historical differences between mortgage and deeds of trust and rejecting any meaningful distinction between mortgage and deed of trust with power of sale].)

---

ascertain is it your claim that now you don't have to pay that money to anyone? That you get to claim that the house was yours just for the down payment? Is that your position?

"[Evans]: That is not my position Your Honor. . . . My position is that I was defrauded into a transaction that was not what it was presented to be. My position is that it was, in fact a U.C.C. instrument that was presented to me and intended for securitization. And the moment it was securitized, that it was paid off."

[13] Civil Code section 2920, subdivision (a), provides, "A mortgage is a contract by which specific property, including an estate for years in real property, is hypothecated for the performance of an act, without the necessity of a change of possession." Subdivision (b) provides, "[f]or purposes of Section 2924 to 2924h, inclusive 'mortgage' also means any security device or instrument, other than a deed of trust, that confers a power of sale affecting real property . . . ."

In sum, Evans has not alleged facts sufficient to state a cause of action for wrongful foreclosure or any other legally cognizable claim for relief nor has she explained how her first amended complaint could be amended to state a claim. (See *Schifando v. City of Los Angeles, supra,* 31 Cal.4th at p. 1081 ["plaintiff has the burden of proving an amendment would cure the defect"].) Accordingly, the trial court did not err in sustaining the Bank defendants' demurrer without leave to amend.[14]

## DISPOSITION

The judgment is affirmed. PHH Home Loans, LLC, doing business as First Capital, and OneWest Bank are to recover their costs on appeal.

PERLUSS, P. J.

We concur:

WOODS, J.

ZELON, J.

---

[14] In light of our holding that Evans's complaint failed to state a claim for relief, we need not address OneWest's alternative argument that its asset purchase agreement with the FDIC precludes its liability for Indymac's conduct prior to March 2009.